Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian L. Lewis, WSBA # 33560
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Karen A. Overstreet
Chapter : 11

Hearing Location: 700 Stewart St.
Room 7206
Seattle, WA

Hearing Time: As determined by Court
(shortened time requested)

Hearing Date: As determined by Court
(shortened time requested)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

COAST CRANE COMPANY,

               Debtor.

No. Case No. 10-21229-KAO

EMERGENCY MOTION FOR INTERIM FINANCING ORDER:

(1) AUTHORIZING POST-PETITION SECURED FINANCING,

(2) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION;

(3) GRANTING LIENS AND SUPER PRIORITY CLAIMS; AND

(4) SCHEDULING A FINAL HEARING

Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364, Fed. R. Bankr. P. ("FRBP") 2002, 4001 and 9014, and Local Bankruptcy Rule 4001-1 and -2, debtor-in-possession Coast Crane Company ("***Debtor***") moves the Court for entry of interim and final orders (i) authorizing Debtor to enter into the postpetition financing agreement described below, (ii) authorizing Debtor's of use cash collateral pursuant to a budget and the postpetition financing agreement, (iii) authorizing Debtor to

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 1

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

grant adequate protection, (iv) granting liens and super-priority claims and (v) scheduling a final hearing on this motion. This motion is based upon the files and records herein and the supporting Declarations of Tom Neary and Matthew W. Hudson filed herewith. In support of this motion, Debtor respectfully represents as follows:

## I. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This motion describes core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A), (D), (G) and (M). Venue is proper under 28 U.S.C. § 1408.

## II. FACTUAL BACKGROUND

### A. Debtor's Business.

Debtor is in the business of leasing, selling and servicing tower cranes, forklifts, hoists, elevators, boom lifts, scissor lifts and other heavy equipment used in commercial construction throughout the world. Debtor is a Delaware corporation with locations throughout the United States and Canada including its principal place of business in Seattle. Debtor's business was established in 1970 and has approximately 167 employees (including 158 U.S. employees). Debtor filed a voluntary Chapter 11 petition on September 22, 2010 (the "*Petition Date*") and has since been operating its business and managing its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

### B. Financial Status of Debtor.

Debtor has very little in the way of liquid assets and minimal cash. As set for in Debtor's Bankruptcy Schedules, Debtor owes approximately $90.5 million in indebtedness secured by security interests in substantially all of its assets, $6.9 million in indebtedness secured by purchase money security interests in favor of certain inventory suppliers and $2.2 million in unsecured indebtedness to various trade creditors, vendors, suppliers and other parties. In addition, as of the Petition Date, Debtor owed approximately $220,000 in employee benefits and wages due for the

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 2

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

payroll period ending September 22, 2010 and will have approximately $150,000 in lease obligations coming due by October 1, 2010. Debtor is in default under various agreements evidencing these debts and has no present ability to service its debts absent the relief requested in this motion.

**C.     Description of Prepetition Indebtedness**.

Debtor has the following general categories of prepetition secured[1] and unsecured debt, more fully described as follows:

*1. Senior Secured Indebtedness*

a.     Lenders and Description of Indebtedness.  PNC Bank, National Association (in its individual capacity as one of the Prepetition Lenders identified herein and as administrative and collateral agent ("*Prepetition Agent*") for the Prepetition Lenders), Wells Fargo Bank, N.A. and Colonial Pacific Leasing Corporation (by way of assignment from other parties and collectively, the "*Prepetition Lenders*") are Debtor's largest prepetition secured creditors under a Revolving Credit and Security Agreement dated May 18, 2007 (as amended, the "*Prepetition Senior Credit Agreement*").  As of the Petition Date, the total indebtedness under the Prepetition Senior Credit Agreement was approximately $75.5 million, plus accrued and unpaid interest, fees and expenses due and owing thereunder (the "*Prepetition Senior Indebtedness*").  A true and correct copy of the Prepetition Senior Credit Agreement is attached to the Declaration of Tom Neary (Debtor's Chief Operating and Financial Officer) filed herewith (the "*Neary Declaration*").

b.     Guaranty.  Debtor's affiliate NCA Crane Parent, Inc. ("*Guarantor*") is identified in the Prepetition Senior Credit Agreement as the guarantor of Debtor's obligations thereunder.

---

[1] Attached to the Neary Declaration is a copy of Debtor's UCC search results from searches conducted June 2, 2010.  The search results evidence the various security interests described herein.  Except as otherwise stated in this Motion and the pleadings filed in support of this Motion, Debtor neither concedes nor disputes the rank, priority or validity of any purported security interest disclosed by the search results.

EMERGENCY MOTION FOR INTERIM FINANCING ORDER AND RELATED RELIEF - 3

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

c     Collateral. Pursuant to the Prepetition Senior Credit Agreement, Debtor and Guarantor granted Prepetition Agent, on behalf of itself and for the benefit of Prepetition Lenders, liens and security interests (the "*Prepetition Senior Security Interests*") in substantially all of their assets and the proceeds and products thereof (the "*Prepetition Collateral*"), subject to certain Permitted Encumbrances as defined in the Prepetition Senior Credit Agreement as security for the performance of their respective obligations under the Prepetition Senior Credit Agreement.

d     Forbearance Agreement. Debtor, Guarantor and Prepetition Lenders entered into a Forbearance Agreement dated April 7, 2010 (as amended, the "*Forbearance Agreement*") which describes certain Material Events of Default under the Prepetition Senior Credit Agreement. The forbearance period under the Forbearance Agreement (as amended) has expired. A true and correct copy of the Forbearance Agreement is attached to the Neary Declaration.

*2. Junior Secured Indebtedness*

a.    Lender and Description of Indebtedness. Knott Partners, L.P. ("*Knott*"), as successor in interest to JPM Mezzanine Capital, LLC, is Debtor's second largest prepetition secured creditor under a Term Loan and Security Agreement dated May 18, 2007 (as amended, the "*Junior Lender Term Loan Agreement*"). As of the Petition Date, the total indebtedness under the Junior Lender Term Loan Agreement was approximately $15.0 million (the "*Prepetition Junior Indebtedness*"). A true and correct copy of the Junior Lender Term Loan Agreement is attached to the Neary Declaration.

b.    Guaranty. Guarantor is identified in the Junior Lender Term Loan Agreement as the guarantor of Debtor's obligations thereunder.

c.    Collateral. Pursuant to the Junior Lender Term Loan Agreement, Debtor and Guarantor granted a blanket security interest in the Prepetition Collateral (also subject to certain Permitted Encumbrances) as security for their respective obligations under the Junior Lender Term Loan Agreement.

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 4

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

d. Intercreditor Agreement. The respective rights and obligations of the Prepetition Lenders and Knott are set forth in that certain Intercreditor and Subordination Agreement dated May 18, 2007 (as amended, the "***Intercreditor Agreement***"). A true and correct copy of the Intercreditor Agreement is attached to the Neary Declaration.

*3. Purchase Money Indebtedness*

Debtor has granted certain purchase-money security interests, more particularly described as follows:

a. DLL. On June 25, 2009, Debtor entered into an Agreement for Inventory Financing (the "***DLL Agreement***") with De Lage Landen Financial Services ("***DLL***"). Under the DLL Agreement, DLL extended a Postpetition Indebtedness to Debtor and Debtor granted DLL a purchase money security interest in certain equipment and inventory (and the proceeds thereof) financed by DLL. As of the Petition Date, the total indebtedness under the DLL Agreement was approximately $4.1 million.

b. Manitowoc/Grove. Manitowoc Crane Group[2] ("***Manitowoc***") and Debtor are parties to that certain Distributor Sales and Service Agreement, dated July 19, 2007 (the "***Manitowoc Agreement***"), pursuant to which Debtor is appointed as a distributor of cranes, parts, and other equipment manufactured by Manitowoc (the "***Manitowoc Products***") and pursuant to which Manitowoc sells the Manitowoc Products to Debtor. As of the Petition Date, the total indebtedness owed to Manitowoc was approximately $2.8 million (the "***Manitowoc Indebtedness***"). Under a Security Agreement dated May 13, 2005 (the "***Manitowoc Security Agreement***"), Debtor's obligations under the Manitowoc Agreement are secured by a purchase money security interest in all inventory, equipment, spare parts, and all other goods of every kind and description manufactured and/or sold by Manitowoc, and owned or acquired by Debtor, financed by Manitowoc, together with all existing and future

---

[2] Manitowoc Crane Group consists of Manitowoc Cranes, Inc., Grove U.S., LLC, National Crane Corporation, Deutsche Grove GmbH, and Potain SAS.

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 5

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

attachments, accessions, accessories, replacements, substitutions, replacement parts and repairs therefor, incorporated therein, attached or affixed thereto, and/or used in connection therewith, and all cash and non-cash proceeds thereof (the "*Manitowoc Collateral*"), provided, however, that the Manitowoc Collateral is limited to those goods for which Manitowoc has not been paid in full. True and correct copies of the Manitowoc Agreement and the Manitowoc Security Agreement are attached to the Neary Declaration.

c. <u>Other Purchase Money Security Interests</u>. As set forth in Debtor's Bankruptcy Schedules, Debtor has granted purchase money security interests in various other assets to secure approximately $30,000 in total indebtedness.

*4. Canadian Loan Facility*

a. <u>Lender and Description of Indebtedness</u>. Debtor and Guarantor are both guarantors of the obligations of Coast Crane Ltd., a British Columbia corporation ("*Canadian Affiliate*") under a Revolving Credit Agreement dated August 17, 2007 (the "*Canadian Revolver*"). GE Canada Equipment Financing G.P., as successor-in-interest to Citicapital Commercial Corporation is the lender under the Canadian Revolver. As of the Petition Date, the total indebtedness under the Canadian Revolver was approximately $2.8 million. A true and correct copy of the Canadian Revolver is attached to the Neary Declaration.

*5. Unsecured Non-priority Indebtedness*

Debtor owes approximately $2.2 million in unsecured non-priority debt to various vendors and supplies.

*6. Interest Rate Swap Indebtedness*

Debtor owes approximately $3.6 million in derivative interest payable ($1.8 million to each PNC Bank and Citibank, N.A.) under separate interest rate swap agreements.

**D.     Debtor's Unexpired Real Property Leases.**

Debtor is the tenant under unexpired real property leases at the following locations:

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 6

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

| Location | Approximate Monthly Rent |
| --- | --- |
| Portland | $ 16,500 |
| West Sacramento Office | $ 15,000 |
| West Sacramento Storage | $ 1,597 |
| City of Industry | $ 12,395 |
| San Leandro | $ 20,225 |
| Bakersfield | $ 5,600 |
| Seattle | $ 17,500 |
| Seattle - TC | $ 8,500 |
| Seattle -sales trailer | $ 1,025 |
| Seattle - TC trailer | $ 850 |
| Tacoma | $ 4,000 |
| Spokane | $ 6,000 |
| Pasco | $ 3,500 |
| Anchorage | $ 11,000 |
| San Diego | $ 7,878 |
| Ontario | $ 7,957 |
| Honolulu | $ 11,855 |

Debtor is current on its unexpired real property leases, but will owe approximately $150,000 for lease obligations coming due October 1, 2010.

### III. NEED FOR POST-PETITION FINANCING AND USE OF CASH COLLATERAL

Debtor is in immediate need of cash to pay ongoing payroll expenses, lease obligations, taxes and other operational expenses. It is essential that Debtor continue to meet its lease and payroll obligations and fund its daily operating costs, as its failure to do so would jeopardize its ongoing operations and impair the value of its assets as a going concern. The value of Debtor's assets is, to a large degree, dependent upon the buyer's ability to retain Debtor's employees and maintain valuable customer relationships.

Debtor is unable to obtain sufficient levels of unsecured credit allowable under 11 U.S.C. § 503(b)(1), has no further credit availability under the Prepetition Senior Credit Agreement or the Junior Term Loan Agreement and does not have sufficient working capital resources to continue its business without immediate additional financing. Further, Debtor is unable to obtain secured credit allowable only under 11 U.S.C. §§ 364(c), except under the terms and conditions provided in the

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 7

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

proposed Order filed herewith.

## IV. RELIEF REQUESTED

Debtor seeks entry of an order authorizing Debtor to (i) obtain interim postpetition financing pursuant to the DIP Facility Agreement (described below) pending a final hearing on approval of the DIP Facility Agreement pursuant to FRBP 4001(c)(2) and (ii) use cash collateral of Prepetition Lenders and Knott on the terms set forth herein.

### A. **Proposed Debtor-in-Possession Financing.**

1. <u>Lender and Material Terms</u>. Prepetition Lenders (collectively with such other lenders who from time to time may become lenders under the DIP Facility Agreement defined below, the "***DIP Lenders***") are prepared to offer debtor-in-possession financing to Debtor pursuant to that certain Modifications to Revolving Credit and Security Agreement (the "***DIP Facility Agreement***"), which would provide up to $20.0 million in postpetition credit to be used in a manner consistent with a proposed budget (the "***DIP Budget***") including, pursuant to FRBP 4001(c)(2), emergency interim credit not to exceed the amounts set forth in the DIP Budget through the date of entry of a final order granting the relief requested by this Motion. Copies of the DIP Facility Agreement and the DIP Budget are attached to the Neary Declaration filed herewith.

Debtor believes the total amount of credit to be provided under the DIP Facility Agreement would be sufficient to allow it to meet its budgetary needs through early November, or until such time as a sale of Debtor's assets could be approved and consummated under 11 U.S.C. § 363. Pursuant to FRBP 4001(c)(1)(B), the following are the material provisions of the DIP Facility Agreement:

a. DIP Lenders may advance up to an aggregate principal amount of $20.0 million (the "***DIP Facility Amount***") on the terms set forth in the DIP Facility Agreement, as necessary to meet Debtor's cash needs. The DIP Facility Amount, together with interest, fees and charges payable thereon is referred to as the "***Postpetition Indebtedness***".

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 8

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

b. Cash advances under the DIP Facility Agreement shall bear interest at the rate of 9.25% per annum (as of the Petition Date, but subject to variance as described therein). (§ 6).

c. The Postpetition Indebtedness will mature on the earlier of (i) 60 days after the Petition Date, (ii) the effective date of Debtor's confirmed plan of reorganization under Chapter 11, if any, or (iii) the closing date of a sale of substantially all of Debtor's assets pursuant to 11 U.S.C § 363. (§ 11).

d. As security for Debtor's obligations under the DIP Facility Agreement, Debtor will grant the DIP Agent, on behalf of itself and for the benefit of the DIP Lenders, (i) pursuant to 11 U.S.C. § 364(c)(1), a super-priority administrative claim with priority over any and all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507(b) subject only to the payment in full of the Carveout (defined below) and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement described in the Asset Purchase Agreement attached as Exhibit J to the Neary Declaration (the "*APA*"), which super-priority administrative claim shall be payable from any unencumbered prepetition or postpetition property of the Debtor whether now existing or hereafter acquired and (ii) pursuant to 11 U.S.C. §§ 363 (c)(2)-(3) and (d)(1), first-priority security interests and liens (collectively, the "*DIP Facility Liens*") in and to all of Debtor's presently owned or hereafter acquired property and assets, subject only to (a) the Carveout, (b) the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement described in the APA and (c) the Permitted Prior Liens (as defined in the proposed Interim Order filed herewith).

e. The DIP Facility Liens and the super-priority claim granted under the DIP Facility Agreement will be subject to a carveout (the "*Carveout*") exclusively for the payment of allowed and unpaid reasonable professional fees and disbursements by professionals retained pursuant to 11 U.S.C. §§ 327, 328, 363 or 1103(a) by Debtor and any statutory committees appointed in Debtor's Chapter 11 case plus quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the Clerk of the Bankruptcy Court and any agent thereof (the

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 9

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

"***Carveout Sums***"). The Carveout Sums may, to the extent there are not sufficient unencumbered funds available to Debtor's estate, be paid from the proceeds of the DIP Lenders' collateral in an aggregate amount not to exceed the amounts set forth in the DIP Budget plus up to $25,000 for Carveout Sums accruing after the Carveout Trigger Date (as defined in the proposed Interim Order filed herewith). Any obligation of the DIP Lenders to fund or otherwise pay any amounts toward the Carveout shall be added to and made part of the Postpetition Indebtedness.

  f. Events of the default under the DIP Facility Agreement include the following (§ 10.b):

- Appointment of a trustee or examiner for Debtor
- Change in Debtor's management
- Conversion of this case to a case under Chapter 7
- Debtor's failure to stay within the Approved Variances for sales and expenses
- Lack of entry of a Final Order approving the DIP facility within 30 days after entry of an Interim Approval Order
- Filing of a Chapter 11 Plan which adversely alters the DIP Lenders' rights
- Debtor's failure to obtain approval of its proposed bidding and sale procedures in connection with a sale of substantially all of its assets on or before November 5, 2010
- Debtor's breach of the APA
- Termination of the APA for any reason other than as a result of an approval of a transaction other than the transaction contemplated by the APA

  g. The Prepetition Agent (on behalf of the Prepetition Lenders) and the DIP Agent (on behalf of the DIP Lenders) will be permitted to credit bid the combined sum of the obligations due under the Prepetition Senior Credit Agreement and the DIP Facility Agreement, or any portion thereof, at any sale of Debtor's assets including any sale conducted pursuant to 11 U.S.C. § 363.

 3. <u>Collateral</u>. Advances under the DIP Facility Agreement would be secured pursuant to

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 10

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

11 U.S.C. §§ 363 (c)(2) and 364(d)(1), with the DIP Facility Liens in and to all of Debtor's presently owned or hereafter acquired property and assets, subject to the Carveout, Prior Permitted Liens and, to the extent payable, Purchaser Break-Up Fee and Expense Reimbursement.

    4.    <u>Loan Fees</u>.  The following loan fees apply to the DIP Facility Agreement: (§ 12):

-Closing fee of 2.0% of the DIP Facility Amount (estimated to be $400,000)

-Exit fee of 0.5% of the combined amount of the Prepetition Senior Indebtedness and the balance owing on the DIP Facility Amount, payable on maturity or earlier default

### B. **Proposed Use of Cash Collateral.**

Debtor seeks to use cash collateral, and proposes granting replacement liens and an administrative claim to the Prepetition Lenders as more fully set forth below.

## V. LEGAL DISCUSSION

### A. **Postpetition Financing**.

11 U.S.C. §§ 364(c) and (d) set forth the means by which a debtor-in-possession may obtain postpetition secured credit.  To obtain credit under § 364(c)(1), (2) or (3), a debtor must be unable to obtain unsecured credit allowable under § 503(b)(1) as an administrative expense.  To obtain credit under § 364(d), a debtor must be unable to otherwise obtain the credit and there must be adequate protection of the interest of the holder of the lien on any property of the estate on which a senior or equal lien is proposed to be granted.

Debtor made substantial prepetition efforts to obtain alternative credit, which are more fully described in the Declaration of Matthew H. Hudson of Oppenheimer & Co. Inc. ("***Oppenheimer***") filed herewith.  In summary, since approximately March 2010 and with assistance from Oppenheimer, Debtor has been attempting to sell its assets or otherwise recapitalize itself. Oppenheimer solicited 140 parties in connection with those efforts.  These efforts resulted in ten (10) written expressions of interest from parties interested in either (i) acquiring Debtor's assets, (ii) purchasing a significant equity interest in Debtor or (iii) entering into a financing transaction with

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 11

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

Debtor. Three of the written proposals were financing proposals (the "***Financing Proposals***"). Each of the Financing Proposals included one or more of the following terms, which proved unacceptable to Debtor and its prepetition lenders:

- Subordination of the Prepetition Senior Indebtedness
- Subordination of the Prepetition Junior Indebtedness
- Principal write-down of the Prepetition Senior Indebtedness
- Principal write-down of the Prepetition Junior Indebtedness
- Equitization (or other recapitalization or conversion) of the Prepetition Junior Indebtedness
- Excessive interest payments/loan fees based on Debtor's gross sales
- Freezing or limitations on the amount of the Prepetition Senior Indebtedness
- Interest rates as high as 20% per annum, but typically in excess of 12%
- Excessive loan fees and/or pre-payment penalties

Oppenheimer was also actively involved in the extensive prepetition negotiations with the Prepetition Lenders regarding the basis for any postpetition financing. Throughout this process, it became apparent that (i) Debtor would not be able to obtain unsecured financing or financing secured by liens junior to the liens of Prepetition Lenders, (ii) Prepetition Lenders are not willing to consent to Debtor obtaining third-party financing secured by liens which are senior to, or *pari passu* with, existing liens on Debtor's assets and (iii) Prepetition Lenders will only agree to provide financing in the context of a chapter 11 debtor-in-possession loan facility on the terms set forth in the proposed DIP Facility Agreement. The DIP Facility Agreement is the result of several weeks of arm's-length negotiations conducted in good faith among Debtor and the DIP Lenders, all of whom have been represented by counsel during such negotiations.

Debtor believes that the terms of the DIP Facility Agreement are fair and reasonable, that obtaining credit under the DIP Facility Agreement is necessary to preserve the value of Debtor's assets and that entering into the DIP Facility Agreement is an exercise of Debtor's sound and reasonable business judgment. Accordingly, the DIP Facility Agreement should be approved

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 12

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

pursuant to §§ 364(c) and (d).  *See, In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60-62 (Bankr. N.D. N.Y. 2005); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

**B.     Use of Cash Collateral**.

11 U.S.C. § 363(c)(2) prohibits a debtor-in-possession from using, selling or leasing cash collateral[3] unless either (i) each entity that has an interest in such cash collateral consents or (ii) the court, after notice and hearing, authorizes such use, sale or lease.  Debtor has an immediate need to fund prepetition payroll, employee benefits, lease obligations and additional critical operating expenses.  Debtor seeks authority to use cash collateral existing as of the Petition Date, and collateral which becomes cash collateral during this Chapter 11 case, for the purposes of periodically repaying the Prepetition Senior Indebtedness, preserving and protecting its assets and otherwise maintaining its operations as a going concern pursuant to the DIP Budget.  Pursuant to 11 U.S.C. § 363(c)(3), Debtor asks that the Court promptly authorize its immediate use of cash collateral on the terms set forth in the proposed Order filed herewith.

**1.     Adequate Protection of Prepetition Lenders.**

In consideration for the use of their collateral and the priming of their prepetition liens, Debtor proposes granting Prepetition Lenders adequate protection in the form of (i) replacements liens in the Prepetition Collateral (the "***Replacement Liens***") and (ii) an allowed administrative claim under 11 U.S.C. § 507(b) (the "***Administrative Claim***") to the extent the Replacement Liens do not adequately protect the diminution in value of the Prepetition Lenders' interests in the Prepetition Collateral from the Petition Date.  The Replacement Liens and the Administrative Claim shall be junior and subordinate only to any super-priority administrative claim ordered pursuant to 11 U.S.C. 364(c)(1), the Carveout, any Permitted Prior Liens and, to the extent payable, the Purchaser Break-up Fee and Expense Reimbursement.

---

[3] "Cash collateral" is defined in 11 U.S.C. § 363(a) as generally meaning cash and cash equivalents in which the estate and an entity other than the estate have an interest, including the proceeds and products of property.

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 13

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

## 2. Adequate Protection of Knott; Intercreditor Agreement.

Pursuant to Section 2.7(a) of the Intercreditor Agreement, Knott (as successor-in-interest and "Junior Lender" under the Junior Lender Term Loan Agreement) has agreed that if Debtor becomes a party to a bankruptcy proceeding and moves for approval to use cash collateral or enter into postpetition financing to be provided by Prepetition Lenders (or any of them): (i) Knott will not object to Debtor's use of cash collateral, (ii) Knott will not object to such postpetition financing so long as such financing, when combined with the Prepetition Senior Indebtedness does not exceed the "Cap Amount" set forth in the Intercreditor Agreement, (iii) Knott will not request adequate protection or any other relief in connection with any such financing (except under the circumstances permitted under the Intercreditor Agreement) and (iv) to the extent the liens securing the Prepetition Senior Indebtedness are subordinated or *pari passu* with liens securing such postpetition financing, the lien securing the Prepetition Junior Indebtedness will similarly be subordinated to the liens securing the postpetition financing on the same basis as the liens securing the Prepetition Junior Indebtedness are subordinated to the liens securing the Prepetition Senior Indebtedness.

The financing contemplated by the DIP Facility Agreement will not result in indebtedness exceeding the Cap Amount under the Intercreditor Agreement. Accordingly, the DIP Facility Agreement is permitted under the Intercreditor Agreement and Knott is not entitled to adequate protection for Debtor's proposed use of cash collateral (except to the extent permitted under the Intercreditor Agreement) and may not validly object to Debtor obtaining credit under the proposed DIP Facility Agreement.

## 3. Adequate Protection of Purchase Money Security Interest Holders.

As noted above, Debtor has entered into certain agreements with Manitowoc/Grove and DLL pursuant to which Manitowoc/Grove and/or DLL may claim that they were granted purchase money security interests in certain equipment purchased by Debtor and financed through DLL and/or

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 14

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022

Manitowoc/Grove and those security interests cover the proceeds of such equipment. Any issues with respect to the relative priority as between the liens and claims granted to the DIP Lenders or the Prepetition Lenders pursuant to this motion and the liens of Manitowoc/Grove and DLL are reserved.

## VI. CONCLUSION

Pursuant to FRBP 4001(b)(2) and 4001(c)(2), a preliminary hearing on this motion is requested in order to avoid immediate and irreparable harm to Debtor's business and its bankruptcy estate. Debtor has immediate cash needs with regard to payroll, employee benefits, lease payments, and daily operational expenses which must be paid from cash collateral pending a final hearing.

Based on the foregoing, Debtor requests that the Court enter an Interim Order in the form submitted herewith approving the DIP Facility Agreement and authorizing Debtor's use of cash collateral pending the final hearing (which Debtor requests that the Court note for October 8, 2010 in conjunction with Debtor's motion to approve its proposed bid and sale procedures) and, at the final hearing, enter an order authorizing the relief requested on a final basis.

DATED this 22nd day of September, 2010.

K&L GATES, LLP

By */s/ Michael J. Gearin*
   Michael J. Gearin, WSBA # 20982
   David C. Neu, WSBA # 33143
   Brian L. Lewis, WSBA # 33560
Attorneys for Coast Crane Company

EMERGENCY MOTION FOR INTERIM FINANCING ORDER
AND RELATED RELIEF - 15

K:\2065889\00014\20136_BLL\20136R21PJ

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022
FACSIMILE: (206) 623-7022