Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian L. Lewis, WSBA # 33560
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
(206) 623-7580

Honorable Karen A. Overstreet
Chapter : 11
Hearing Location:  700 Stewart St.
                               Room 7206
                               Seattle, WA
Hearing Time: As determined by Court
                        (shortened time requested)

Hearing Date:  As determined by Court
                        (shortened time requested)

Response Date: Hearing Date

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:

COAST CRANE COMPANY,

                                    Debtor.

Case No. 10-21229-KAO

[PROPOSED]

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE
BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH
COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE,
(III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE
BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY
CLAIMS, (V) SCHEDULING A FINAL HEARING ON THE DEBTOR'S
MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS**

This matter is before the Court on the motion (Docket No. ___, the "Motion") filed by

Coast Crane Company, as debtor and debtor-in-possession (the "Debtor")[1] in the above-

captioned chapter 11 case (the "Case") requesting entry of an order (the "Order"), on an interim

and final basis, among other things:[2]

_____

[1]  The Debtor is Coast Crane Company, a Delaware corporation (EIN 32-0120926).
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in
the DIP Facility Agreement (defined below).

INTERIM ORDER**Error! Reference source not found.** - 1

(1)     Authorizing and approving, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for the Debtor, as Borrower, and the other Credit Parties signatory thereto to obtain postpetition financing up to the principal amount of $20,000,000 (the "<u>DIP Facility</u>") from PNC Bank, National Association (in its individual capacity, "<u>PNC Bank</u>"), for itself as a DIP Lender, and as administrative agent for the DIP Lenders (in such capacity, the "<u>DIP Agent</u>"), and the other lenders from time to time parties to the DIP Facility Agreement (as defined below) (collectively, in their lender capacity, the "<u>DIP Lenders</u>"), to (A) fund, among other things, ongoing working capital, general corporate, and other financing needs of the Debtor, (B) pay down the Revolving Advances (as defined below), which amounts are stipulated to be secured by the Prepetition Collateral (as defined below), (C) provide the Prepetition Agent and Prepetition Lenders with the Adequate Protection (each as defined below), (D) pay certain transaction fees, and other costs and expenses of administration of the Case, and (E) pay fees and expenses (including, without limitation, reasonable fees and expenses of counsel and financial advisors) owed to the DIP Agent and the DIP Lenders under the DIP Facility Documents (obligations under the DIP Facility and under this Interim Order, including, without limitation, principal, accrued interest, unpaid reasonable fees and expenses, and all other obligations and amounts due from time to time under the DIP Facility Documents (as defined below) shall be referred to hereinafter collectively as the "<u>Postpetition Indebtedness</u>");

(2)     Authorizing and empowering the Debtor to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     providing, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the obligations under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c),

INTERIM ORDER**Error! Reference source not found.** - 2

K:\2065889\00014\20136_BLL\20136P21RT

507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Case or any successor case, which allowed superpriority claims of the DIP Agent and DIP Lenders shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtor as provided herein (other than from the Avoidance Actions and proceeds thereof), subject to the payment in full in cash of the Carve-Out (as defined below) and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement[3] (the "DIP Facility Superpriority Claims"); and

b.      be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests and liens (the "DIP Facility Liens") in and on all prepetition and postpetition property and assets of the Debtor, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Collateral"), subject only to the Carve-Out and the Permitted Prior Liens and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement; provided, however, that the Collateral shall not include avoidance actions and/or the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code (the "Avoidance Actions");

(4)      authorizing the Debtor pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code to use "cash collateral" (as defined under section 363 of the Bankruptcy Code) and provide Adequate Protection as defined in below to the Prepetition Agent and Prepetition Lenders on account of their claims under the Prepetition Loan Documents (as defined below) for any diminution in the value of their respective interests in the Prepetition

---

[3] As used herein, the term "Purchaser Break-Up Fee and Expense Reimbursement" means the break-up fee and expense reimbursement, if any, to be paid to the Purchaser by the Debtor in accordance with the Purchase Agreement, subject to approval of this Court.

INTERIM ORDER**Error! Reference source not found.** - 3

K:\2065889\00014\20136_BLL\20136P21RT

Collateral (as defined below) caused by the use of Cash Collateral and the terms of the financing being granted herein; and

(5)     scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of an order approving the DIP Facility, authorizing the use of Cash Collateral, and authorizing the grant of Adequate Protection to the Prepetition Agent and Prepetition Lenders, all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion before this Court to consider entry of this Interim Order (the "Interim Hearing") having been provided by the Debtor as set forth in paragraph I below, and the Interim Hearing having been held on September ___, 2010, and the Court having considered of all the pleadings filed with this Court, including any objections to the relief requested in the Motion that were not withdrawn or resolved at or prior to the hearing; and upon the record made by the Debtor at the Interim Hearing and the Declaration of Matthew W. Hudson (Docket No. ___) and Tom Neary (Docket No. ____), and after due deliberation and consideration and good and sufficient cause appearing therefore;

IT IS HEREBY FOUND:

A.     On September 22, 2010 (the "Petition Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its respective businesses and manage its respective properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     No request for the appointment of a trustee or examiner has been made in this Case. No committee has been appointed or designated.

C.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

INTERIM ORDER**Error! Reference source not found.** - 4

K:\2065889\00014\20136_BLL\20136P21RT

D.      Subject to the rights of any non-Debtor party in interest as provided in paragraph 6 herein, the Debtor acknowledges, agrees and stipulates that:

(i)      Pursuant to that certain Revolving Credit and Security Agreement, dated as of May 18, 2007, among NCA Crane Acquisition Co., Inc., Coast Crane Holdings, Inc., and Coast Crane Company, PNC Bank, as a Prepetition Lender and administrative and collateral agent (in such capacity, the "Prepetition Agent"), and Wells Fargo Bank, N.A. and Colonial Pacific Leasing Corporation as lenders (each, a "Prepetition Lender" and collectively in their lender capacity, the "Prepetition Lenders") party thereto (as amended, supplemented, or otherwise modified as of the Petition Date, the "Prepetition Credit Agreement"; and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"), the Prepetition Lenders made loans, and provided other financial accommodations to or for the benefit of the Debtor;

(ii)      Pursuant to the Prepetition Loan Documents, the Debtor was, as of the Petition Date, indebted to the Prepetition Agent and the Prepetition Lenders in the amount of $75,509,626 with respect to "Revolving Advances" (as defined in the Prepetition Credit Agreement, the "Revolver"), plus accrued and unpaid interest thereon plus accrued and unpaid fees, costs and expenses due and owing thereunder;

(iii)      For purposes of this Interim Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of

INTERIM ORDER**Error! Reference source not found.** - 5

K:\2065889\00014\20136_BLL\20136P21RT

the Prepetition Loan Documents), and any and all obligations and liabilities, contingent or otherwise, owed with respect to other obligations outstanding thereunder;

(iv)     Pursuant to the Prepetition Loan Documents, the Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Lenders, liens and security interests (the "Prepetition Liens") on and in substantially all of the Debtor's property and assets whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral") to secure the Prepetition Indebtedness and guaranties thereof;

(v)     As of the Petition Date and immediately prior to giving effect to this Interim Order, but subject to the rights of any non-Debtor party in interest as provided in paragraph 6 of this Interim Order, (a) the Prepetition Loan Documents are valid and binding agreements and obligations of the Debtor, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the Permitted Encumbrances (as defined in the Prepetition Credit Agreement) and (ii) are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtor, and the Prepetition Indebtedness, and any amounts paid at any time to the Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (d) no claims of the Debtor exist against the Prepetition Agent or any Prepetition Lender under any contract or tort (including, without limitation, lender liability) theories of recovery or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code; and

INTERIM ORDER**Error! Reference source not found.** - 6

K:\2065889\00014\20136_BLL\20136P21RT

(vi)     Subject to the rights of any non-Debtor party in interest as provided in paragraph 6 of this Interim Order, the Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent, the Prepetition Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such).

E.     The Debtor's business has an immediate need for financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs.  The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtor and to the success of the Case.  Without such credit and use of Cash Collateral, the Debtor would not be able to operate its business and the Debtor's estate would be irreparably harmed.

F.     The Debtor is unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement (as defined below), the "DIP Facility Documents").  The Debtor has been unable to obtain sufficient unsecured credit solely under section 503(b) (1) of the Bankruptcy Code as an administrative expense.  New credit is unavailable to the Debtor without providing (a) the DIP Agent, for the benefit of the DIP Lenders, the DIP Facility Superpriority Claims and the DIP Facility Liens as provided herein and in the DIP Facility

INTERIM ORDER**Error! Reference source not found.** - 7

K:\2065889\00014\20136_BLL\20136P21RT

Documents, and (b) the Prepetition Agent and Prepetition Lenders with Adequate Protection of their interests in the Prepetition Collateral on the terms and conditions as set forth herein.

G.      Pending entry of the Final Order, the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders are willing to provide financing to the Debtor and/or consent to the use of Cash Collateral and other Collateral by the Debtor subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Facility Documents, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtor's estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Liens, DIP Facility Superpriority Claims, and the other protections granted pursuant to this Interim Order and the DIP Facility Documents with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Without limiting the foregoing, any advances made to the Debtor under the DIP Facility Documents after entry of this Interim Order and prior to entry of the Final Order shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code. The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders have each acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Interim Order and the other DIP Facility Documents, and the reliance by the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders on the assurances referred to above is in good faith.

H.      Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to (a) the twenty (20) largest creditors listed in the Debtor's list of creditors (excluding insiders), (b) the Office of the United States Trustee for the Western District of Washington (the "U.S. Trustee"), (c) counsel to the DIP Agent and Prepetition Agent, (d) Knott Partners, L.P., as successor in interest to JPM Mezzanine Capital, LLC (the "Junior Lender") under that certain Term Loan

and Security Agreement dated May 18, 2007 to which the Debtor is a party ("Junior Loan Agreement"); (e) all known parties asserting a lien against the Collateral, (e) the U.S. Attorney, (f) the Attorney General for the State of Washington, and (g) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules (collectively, the "Notice Parties").  Under all the exigent circumstances, the requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001.

I.      The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2).  Absent entry of this Interim Order, the Debtor's business, properties and estates will be immediately and irreparably harmed.

J.      The ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, and use of Cash Collateral are in the best interests of the Debtor and its creditors and estate.  The primary purpose of the financing and use of cash collateral authorized hereunder is to enable the Debtors to continue operations pending the consummation of the sale of substantially all of the Debtors' assets to Coast Rainier Acquisition Company or its assigns (collectively, the "Purchaser") pursuant to that certain Asset Purchase Agreement (the "Purchase Agreement") dated September 21, 2010, subject to the Debtors' receipt of higher and better bids in accordance with bidding procedures described in the Debtors' Motion for Order, Inter Alia, (i) Scheduling a Hearing to Approve Asset Purchase Agreement with Coast Rainier Acquisition Company for Sale of Debtor's Assets, Free and Clear of Liens; (ii) Approving the Form and Manner of Notice; (iii) Approving Expense Reimbursement; (iv) Approving Bidding Procedures; and (v) Approving Procedures for Assumption and Assignment of Executory Contracts (Docket No. ____).  The interim financing and use of Cash Collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's business, properties and

INTERIM ORDER**Error! Reference source not found.** - 9

K:\2065889\00014\20136_BLL\20136P21RT

estates and to allow the orderly continuation of the Debtor's business pending the consummation of a sale.

K.    Based upon the record presented by the Debtor to this Court:  (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtor, DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, and any loans, credit, use of Cash Collateral or other financial accommodations set forth in this Interim Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

L.    The Prepetition Agent and Prepetition Lenders have consented to the relief sought in the Motion; provided, that such consent is expressly limited to: (i) the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Interim Order; and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Interim Order and the DIP Facility Documents.  Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Agent and Prepetition Lenders are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

M.    Pursuant to the terms of the Junior Loan Agreement, the Debtor granted security interests in certain of its assets to the Junior Lender (the "Prepetition Junior Liens"). Pursuant to Section 2.7(a) of an Intercreditor Agreement between the Prepetition Lenders and Junior Lender, Junior Lender has agreed that if the Debtor becomes a party to a bankruptcy proceeding and moves for approval to use cash collateral or enter into postpetition financing to be provided by Prepetition Lenders (or any of them):  (i) Junior Lender will not object to the Debtor's use of cash collateral, (ii) Junior Lender will not object to such postpetition financing

INTERIM ORDER**Error! Reference source not found.** - 10

K:\2065889\00014\20136_BLL\20136P21RT

so long as such financing, when combined with the indebtedness under the Prepetition Credit Agreement does not exceed the "Cap Amount" set forth in the Intercreditor Agreement, (iii) Junior Lender will not request adequate protection or any other relief in connection with any such financing except under the circumstances permitted under the Intercreditor Agreement, and (iv) to the extent the liens securing the indebtedness under the Prepetition Credit Agreement are subordinated or *pari passu* with liens securing such postpetition financing, the Prepetition Junior Liens will similarly be subordinated to the liens securing the postpetition financing on the same basis as the Prepetition Junior Liens are subordinated to the liens securing the indebtedness under the Prepetition Credit Agreement.

N. The postpetition financing contemplated by the Motion and under the DIP Facility Agreement will not result in indebtedness exceeding the Cap Amount described in the Intercreditor Agreement. Accordingly, the DIP Facility Agreement is permitted under the Intercreditor Agreement and Junior Lender is not entitled to adequate protection for Debtor's proposed use of cash collateral, except to the extent permitted under the Intercreditor Agreement.

O. The Debtor entered into certain agreements with (i) Manitowoc Cranes, Inc. Grove U.S. LLC and National Crane Corporation (collectively, "Manitowoc/Grove") and (ii) De Lage Landen Financial Services ("DLL") pursuant to which Manitowoc/Grove and/or DLL may claim that they were granted purchase money security interests in certain equipment purchased by the Debtor and financed through DLL and/or Manitowoc/Grove and such security interests cover the proceeds of such equipment. Any issues with respect to the relative priority as between the liens and claims granted to the DIP Lenders or the Prepetition Lenders pursuant to this Interim Order and the liens of Manitowoc/Grove and DLL are reserved.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. <u>Disposition</u>. The Motion is granted as set forth in this Interim Order. Any objections that have not previously been withdrawn or resolved at the hearing are hereby overruled. This Interim Order shall immediately become effective upon its entry.

INTERIM ORDER**Error! Reference source not found.** - 11

K:\206588\9\00014\20136_BLL\20136P21RT

2. <u>Authorization to Borrow Under the DIP Facility</u>.  With its consent and agreement, the Debtor is deemed to have re-executed and re-delivered all documents comprising the Prepetition Credit Agreement as of the date hereof, which shall constitute, together with, a fully executed and delivered Modification to DIP Facility Agreement in substantially the form annexed to the Motion, the "<u>DIP Facility Agreement</u>".  With its consent and agreement, the Debtor is deemed to have re-executed and re-delivered all the Prepetition Loan Documents, all of which shall constitute DIP Facility Documents.  Provided that the Debtor is not in default under the terms of this Interim Order or the DIP Facility Agreement, the Debtor is authorized to borrow under the DIP Facility from the DIP Lenders, in accordance with the terms and conditions of the DIP Facility Agreement and only in the amounts and at the times set forth in the budget attached to the DIP Facility Agreement (the "DIP Budget"),  up to $20,000,000 in an aggregate principal amount of advances (the "<u>DIP Facility Amount</u>") (together with interest and reasonable fees, charges and expenses payable under the DIP Facility Documents) , and to use amounts borrowed under the DIP Facility to fund the Debtor's working capital and other general corporate needs pending the Final Hearing in accordance with the terms of the DIP Facility Agreement and this Interim Order; <u>provided</u>, <u>however</u>, that, until entry of the Final Order and without further order of this Court, amounts actually advanced by the DIP Lenders shall not exceed those amounts set forth in the DIP Budget through the date of entry of the Final Order.  Upon their execution and delivery, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  To the extent that relief is approved at the Final Hearing, but only in accordance with the terms and conditions of the DIP Facility Agreement and only in the amounts and at the times set forth in the DIP Budget, the Debtor shall , be entitled to borrow all amounts available under the DIP Facility Agreement to fund the Debtor's working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Facility Documents, this Interim

INTERIM ORDER**Error! Reference source not found.** - 12

K:\2065889\00014\20136_BLL\20136P21RT

Order and any other orders of this Court, including, but not limited to, any amounts then outstanding with respect to the Revolver.

3. <u>DIP Facility Superpriority Claims</u>. For the Postpetition Indebtedness and any other of the Debtor's obligations arising under the DIP Facility Documents, the DIP Lenders and DIP Agent are each granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the payment in full in cash of the Carve-Out and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement, the allowed DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtor whether now existing or hereafter acquired (other than the Avoidance Actions and proceeds thereof). The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Case and any successor case.

4. <u>DIP Facility Liens</u>. As security for the repayment of the Postpetition Indebtedness arising under the DIP Facility Documents, pursuant to sections 364(c) (2), (c) (3) and (d) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted (without the necessity of the execution by the Debtor or the filing, recordation, or execution and delivery of mortgages, security agreements, control agreements, financing statements, or otherwise) the DIP Facility Liens. The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date hereof, shall prime and be senior in all respects to the Prepetition Liens, the Replacement Liens (as defined below), and the Junior Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code, and are subject only to the Carve-Out and the Permitted Prior Liens and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement. As used herein, the term "<u>Permitted Prior Liens</u>") means only such liens and security interests that are (a) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (b) not subject to avoidance,

INTERIM ORDER**Error! Reference source not found.** - 13

K:\2065889\00014\20136_BLL\20136P21RT

reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non bankruptcy law and (c) senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, including without limitation the Intercreditor and Subordination Agreement between the Debtor, PNC Bank, as agent, and JPM Mezzanine LLC, dated as of May 18, 2007 (as amended from time to time, the "Intercreditor Agreement").

5.    Carve-Out.

(a)    As used in this Interim Order, the term "Carve-Out" shall mean, to the extent there are not sufficient unencumbered funds available to the Debtor' s estate, proceeds of Collateral to pay the following expenses: (i) any unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of title 28 of the United States Code (in this regard, the Debtor is ordered to pay any and all such fees as and when due); and (ii) subject to the terms and conditions of this Interim Order, the allowed and unpaid reasonable fees and expenses of retained professionals ("Professionals") employed pursuant to sections 327, 328, 363 and 1103 of the Bankruptcy Code (other than ordinary course professionals) (collectively, the "Professional Fees") by the Debtor or any official committee of unsecured creditors (if appointed, the "Committee")  (X) prior to the Carve-Out Trigger Date (as defined herein) (and including amounts incurred but not invoiced or approved prior to the Carve-Out Trigger Date), an aggregate amount not to exceed the amounts for each such firm of Professionals for each period as set forth in the DIP Budget, and (Y) following the Carve-Out Trigger Date, an aggregate amount not to exceed $25,000 (items (i) and (ii), collectively, the "Maximum Carve-Out Amount").  As used herein, "Carve-Out Trigger Date" shall mean the earlier of  (i) the date on which the DIP Agent provides written notice to the Debtor and counsel to the Debtor, with a copy of such notice to counsel for the Committee (if appointed), that the Carve-Out is revoked, which notice shall be delivered only on or after and during the continuation of an Event of Default under the DIP Facility and the termination of funding under the DIP Facility; or (ii) the Commitment Termination Date. For the avoidance of doubt, the

portion of the Carve-Out allocated to each Professional pursuant to clause (a) (ii) (X) above shall be limited to the amount set forth in the DIP Budget for such Professional.

(b) Each week, the Debtor shall either (i) set aside in trust with the Debtor's counsel, or (ii) pay, to the applicable Professionals, those amounts set forth in the DIP Budget for Professional Fees; the Maximum Carve-Out Amount shall be reduced each week by the amounts set forth in the DIP Budget for payment of Professional Fees during such week.

(c) Any obligation of the DIP Lenders to fund or otherwise pay any amounts toward the Carve-Out shall be added to and made a part of the Postpetition Indebtedness and secured by the Collateral, and each DIP Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Interim Order, the DIP Facility Agreement, the Bankruptcy Code, and/or applicable law in connection therewith.

(d) Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, Cash Collateral, amounts borrowed under the DIP Facility Documents, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including the Debtor or the Committee (if appointed), in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to, the Postpetition Indebtedness, the DIP Facility Superpriority Claims, or the DIP Facility Liens, (ii) asserting or soliciting or encouraging other parties to assert (A) any claims or causes of action against the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, including, without limitation, claims or actions to hinder or delay the assertion or enforcement of the DIP Facility Liens or Replacement Liens, or realization on the Collateral, in accordance with the DIP Facility Documents or this Interim Order by the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, or (B) any Avoidance Actions against any DIP Agent, any DIP Lender,

INTERIM ORDER**Error! Reference source not found.** - 15

K:\2065889\00014\20136_BLL\20136P21RT

the Prepetition Agent or any Prepetition Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Agent or any Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Indebtedness, any Prepetition Loan Document, or the Adequate Protection granted herein; provided, however, that the Committee (if appointed) shall be authorized to use up to an aggregate amount of $10,000 to (i) investigate the liens, claims and interests of the Prepetition Agent and the Prepetition Lenders, or any other claims or causes of action against the Prepetition Agent or any Prepetition Lender which may be held by the Debtor's estate and (ii) negotiate and/or contest the terms or entry of the Final Order. The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any Debtor's obligations owed to the DIP Agent or any DIP Lender or the Prepetition Agent or any Prepetition Lender or (y) except as expressly provided herein, subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties on and in the Collateral or Prepetition Collateral (or their respective claims against the Debtor).

6. <u>Investigation Rights</u>. Notwithstanding anything herein to the contrary, until the later of (a) for parties-in-interest, sixty (60) days following entry of this Interim Order and (b) forty-five (45) days following formation of the Committee (the "<u>Investigation Termination Date</u>") the Committee, or, if no Committee has been formed, any party-in-interest, shall be entitled to investigate the validity, amount, perfection, priority, and enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action held by the Debtor's estate against the Prepetition Agent or any Prepetition Lender. If the Committee (or any party-in-interest, as applicable) determines that there may be a challenge

to the Prepetition Agent or any Prepetition Lender's prepetition liens, claims or security interests, the Committee (or any party-in-interest, as applicable) may, on or before the Investigation Termination Date, file a motion or otherwise initiate an appropriate action (including any motion or other action seeking standing to prosecute such challenge) (each, a "Challenge"), and shall have only until the Investigation Termination Date to file an objection or otherwise initiate an appropriate action setting forth the basis of such Challenge. If a party does not file a Challenge on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and the Prepetition Agent or by order of this Court), (a) disputing any agreement, acknowledgement, release and/or stipulation contained in paragraph D of this Interim Order, then the agreements, acknowledgements, releases and stipulations contained in paragraph D of this Interim Order which have not been expressly disputed as the basis of a Challenge shall be irrevocably binding on all other parties, the estates, the Committee and all parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Case or any successor case in any jurisdiction) without further action by any party or this Court, and (b) the Committee and any other party in interest (including without limitation, any receiver, administrator, or trustee appointed in any of the Case or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Agent or any Prepetition Lender. If any Challenge is timely filed on or before the Investigation Termination Date, all other claims and actions held by the party filing such Challenge against the Prepetition Agent or any Prepetition Lender not expressly asserted in such Challenge shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Interim Order (a) confers standing on any party to file or prosecute such claims and actions described herein or (b) precludes the Prepetition Agent or any Prepetition Lender from seeking allowance of all or any portion of the Prepetition Indebtedness prior to the occurrence of the Investigation Termination Date. The Investigation Termination Date may not be extended

INTERIM ORDER**Error! Reference source not found.** - 17

K:\2065889\00014\20136_BLL\20136P21RT

unless (a) the DIP Agent (on behalf of the DIP Lenders), the Prepetition Agent (on behalf of the Prepetition Lenders), and the Debtor each consent in writing to an extension or (b) the Committee (if appointed) or any party in interest files a motion seeking an extension before the expiration of the Investigation Termination Date and the Court enters an order granting such an extension (regardless of whether such order is entered after the Investigation Termination Date). Notwithstanding anything herein to the contrary, if the Committee has been appointed and upon entry of a Final Order, only the Committee shall be entitled to bring a Challenge on behalf of the Debtor's estate against the Prepetition Agent or any Prepetition Lender; no other party in interest shall be entitled to investigate the validity, amount, perfection, priority, or enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action held by the Debtor's estates against the Prepetition Agent or any Prepetition Lender.

7. Section 506(c) and 552(b) Waivers. Effective upon entry of a Final Order providing for such relief, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility or this Interim Order, neither the Collateral nor the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, nor any of their claims, shall be subject to any costs or expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtor or any other party in interest without the prior written consent of the DIP Agent, and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to, funding of the Debtor's ongoing operations by the DIP Agent and DIP Lenders. Effective upon entry of a Final Order providing for such relief, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived with respect to the Collateral. Neither the DIP Agent or any DIP Lender, nor the Prepetition Agent or any Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral. The Debtor has represented and warranted that those sums set forth in the DIP Budget are

1    sufficient to pay all costs or expenses of administration that have been or may be incurred, and

2    the Debtor is hereby ordered to use any and all sums borrowed pursuant to the DIP Facility

3    only for purposes of paying those sums set forth in the DIP Budget.

4    8.    Authorization to Use Cash Collateral and Application of Collections and

5    Certain Sale Proceeds.  Upon entry of this Interim Order, to the extent that Debtor has cash on

6    hand as of the Petition Date (the "Petition Date Cash"), the Debtor is immediately authorized

7    pursuant to sections 105, 361, 363, 541 and 553 of the Bankruptcy Code and Bankruptcy Rules

8    2002, 4001 and 9014, to use Cash Collateral up to the amount of the Petition Date Cash for the

9    operation of its business in accordance with the DIP Budget; provided, however, that upon

10   entry of this Interim Order, all cash collected by the Debtor in the ordinary course of its

11   operations shall, except as otherwise expressly provided in the DIP Facility Agreement, be paid

12   to the Prepetition Agent to pay down the Revolver in accordance with the Prepetition Loan

13   Documents.  To fund the Debtor's working capital and other general corporate needs pending

14   the Final Hearing, in accordance with the terms of this Interim Order, the DIP Facility

15   Documents and the DIP Budget, the Debtor may request revolving credit advances under the

16   DIP Facility ("DIP Revolving Credit Advances").  In the event there are out of the ordinary

17   course sales of Prepetition Collateral prior to the Final Hearing, the net cash proceeds of such

18   sales shall be applied to the Revolver in accordance with the Prepetition Loan Documents.

19   Upon entry of a Final Order providing for such relief, the Debtor shall use DIP Revolving

20   Credit Advances under the DIP Facility to fund the Debtor's working capital and other general

21   corporate needs in accordance with the terms of the Final Order, the DIP Facility Documents

22   and the DIP Budget.

23   9.    Adequate Protection of Prepetition Lenders.  In consideration for the use

24   of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition

25   Liens, the Prepetition Agent (on behalf of the Prepetition Lenders) shall receive the following

26   (collectively the "Adequate Protection"):

27

INTERIM ORDER**Error! Reference source not found.** - 19

K:\2065889\00014\20136_BLL\20136P21RT

(a)     <u>Adequate Protection Liens</u>.  To the extent there is a diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Agent (on behalf of the Prepetition Lenders) seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Prepetition Agent, on behalf of the Prepetition Lenders, is granted replacement liens (the "<u>Replacement Liens</u>") in the Collateral, which Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtor or the Prepetition Agent of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, the DIP Liens and the Permitted Prior Liens and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such Replacement Liens shall cover assets, interest, and proceeds of the Debtor that are or would be collateral under the Prepetition Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

(b)     <u>Administrative Claim</u>.  The Prepetition Agent (on behalf of the Prepetition Lenders) is hereby granted in each of the Debtor's Case an allowed administrative claim (the "<u>Administrative Claim</u>") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations, to the extent that the Replacement Liens do not adequately protect the diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral from the Petition Date, and such Administrative Claim shall be junior and subordinate only to any superpriority claim of the kind specified in, or ordered pursuant to, section 364 of the Bankruptcy Code, the Carve-Out and any Permitted Prior Liens and, to the

INTERIM ORDER**Error! Reference source not found.** - 20

K:\2065889\00014\20136_BLL\20136P21RT

extent payable, the Purchaser Break-Up Fee and Expense Reimbursement. The Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (excluding the Avoidance Actions and proceeds thereof).

(c)     Access.  In accordance with the terms of the Prepetition Credit Agreement, the Prepetition Agent and Prepetition Lenders shall be afforded continued reporting as to Collateral amounts and reasonable access to the Collateral and the Debtor's business premises, during normal business hours, for purposes of verifying the Debtor's compliance with the terms of this Interim Order as it pertains to the Prepetition Agent and Prepetition Lenders.  Such reports shall include but not be limited to (i) those required by the DIP Facility Agreement, and (ii) a weekly report on Tuesday of each week, in form acceptable to the DIP Lenders, comparing actual sales, revenues, and expenses for (x) the week ending on Friday of the prior week, (y) the three week period ending on Friday of the prior week, and (z) the entire post-petition period ending on Friday of the prior week.  In addition, the Debtor shall permit representatives, agents, and employees of the DIP Agent and the DIP Lenders to have reasonable access to the Debtor's premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

(d)     Adequate Protection Payments.  Subject to the remainder of this paragraph 9(d) and paragraph 10 below, the Debtor shall timely pay to the Prepetition Agent from Cash Collateral or Revolving Credit Advances under the DIP Facility amounts as they accrue in connection with the Prepetition Indebtedness (the "Adequate Protection Payments"), including, without limitation, the current cash payment of interest charged on the Prepetition Indebtedness at the times provided for in the Prepetition Credit Agreement, cash management fees, expenses and charges.

(e)     Allowance of Claims.  Subject to any successful and timely Challenge pursuant to paragraph 6 above, the claims arising from or in connection with the

INTERIM ORDER**Error! Reference source not found.** - 21

K:\2065889\00014\20136_BLL\20136P21RT

Prepetition Indebtedness are hereby deemed "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

(f)     Right to Credit Bid.  , The Prepetition Agent (on behalf of the Prepetition Lenders) and the DIP Agent (on behalf of the DIP Lenders) shall have the right to "credit bid" the combined amount of the Prepetition Lenders' claims and all amounts owed under the DIP Facility during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

(g)     The automatic stay is modified as to the Prepetition Agent (on behalf of the Prepetition Lenders) to allow implementation of the provisions of this paragraph 9, without further notice or order of the Court.

10.     Reimbursement of Fees and Expenses.  The Debtor shall promptly reimburse (i) the DIP Agent and the DIP Lenders in accordance with the DIP Facility Documents and (ii) the Prepetition Agent and the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement, for their reasonable costs and fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges and expenses.  None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute regarding the reasonableness of any such costs, fees, charges and expenses; provided further, however, that any payment of costs, fees, charges and expenses due to the Prepetition Agent and the Prepetition Lenders shall be subject to recharacterization as payment of principal in the event, and only to the extent, that the Prepetition Lenders may be determined to be undersecured.  The payment of such fees and costs in amounts in excess of those set forth in the Budget will not result in a breach of the DIP Facility Documents and DIP

INTERIM ORDER**Error! Reference source not found.** - 22

K:\2065889\00014\20136_BLL\20136P21RT

Agent shall provide additional funding under the DIP Facility to satisfy any such excess fees and costs before such fees and costs are reimbursed.

11.     <u>Restrictions on the Debtor</u>.  Other than the Carve-Out and the Permitted Prior Liens and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement, no claim or lien having a priority superior or *pari passu* with those granted by this Interim Order to the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders shall be granted by the Debtor, while any obligations under the DIP Facility (or refinancing thereof) or any Prepetition Indebtedness remains outstanding without the written consent of the DIP Agent and Prepetition Agent.  Except as expressly permitted by the DIP Facility Documents and this Interim Order, the Debtor will not, at any time during the Case while any obligations under the DIP Facility and/or the Prepetition Credit Agreement remain outstanding, grant senior or *pari passu* mortgages, security interests, or liens in the Collateral, the Prepetition Collateral, or any portion thereof pursuant to section 364(d) of the Bankruptcy Code or otherwise.

12.     <u>Additional Perfection Measures</u>.  Neither the DIP Agent nor any DIP Lender or the Prepetition Agent or any Prepetition Lender shall be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Interim Order (including, without limitation, taking possession of or obtaining control over any of the Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Agent or any DIP Lender may, in its discretion, file this Interim Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded or other action taken on the Petition Date, with the priorities set forth herein; <u>provided</u>, that the

INTERIM ORDER**Error! Reference source not found.** - 23

K:\2065889\00014\20136_BLL\20136P21RT

failure of the DIP Facility Agent or any DIP Facility Lender to file any such financing statement, mortgage, deed of trust, notice of lien or other instrument, or to otherwise confirm perfection of such liens, security interests or mortgages or make any other such request shall not affect either the perfection or priority of the DIP Facility Liens.

13. <u>Rights with Respect to Certain Prepetition Agreements</u>. The DIP Agent and the DIP Lenders shall have all the rights and benefits with respect to each Blocked Account (as defined in the Prepetition Credit Agreement), any securities or other accounts subject to a Control Letter (as defined in the Prepetition Credit Agreement), each other agreement with a third party (including, but not limited to, any agreement with a landlord, warehouseman, customs broker, or freight forwarder), and each other notification or agreement received or furnished in connection with the Prepetition Credit Agreement, and all depository banks, blocked account banks, landlords, securities intermediary, warehousemen, customs brokers, freight forwarders and other third parties shall continue to comply, for the benefit of the DIP Lenders, with the terms and conditions of each such agreement or notification, in each such case whether or not, and as if, an additional agreement or notification has been executed or furnished in connection with the DIP Facility. For the avoidance of doubt, the Junior Secured Lender shall comply with the requirements of this paragraph.

14. <u>Access to Collateral – No Landlord's Liens</u>. Upon entry of a Final Order providing for such relief and subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the benefit of the DIP Lenders, contained in this Interim Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents and paragraph 15 below, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent (the "<u>Separate Agreement</u>"), enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and,

INTERIM ORDER**Error! Reference source not found.** - 24

K:\2065889\00014\20136_BLL\20136P21RT

subject to the Separate Agreement, shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from such landlord; provided, that, subject to the Separate Agreement, the DIP Agent shall only pay rent of the Debtor that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.

15. Automatic Stay. Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence and during the continuation of any Event of Default under the DIP Facility Documents, and delivery by the DIP Agent of written notice of its intent to exercise remedies (a "Remedies Notice") in each case given to the Debtor and its counsel, counsel to the Committee (if appointed) and the United States Trustee, the DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Facility Agreement without further order of this Court beginning five (5) business days following delivery of the Remedies Notice (the "Remedies Notice Period") unless otherwise provided by order of this Court; provided, however, immediately upon the commencement of the Remedies Notice Period and thereafter until the Remedies Expiration Date: (i) the DIP Lenders may charge default rates of interest; (ii) the Debtor shall have no right to use any Collateral except for payment of the Carve-Out, the Adequate Protection Payments, the Prepetition Indebtedness and the Postpetition Indebtedness and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement, or as otherwise provided in the last sentence of paragraph 2 of this Interim Order; and (iii) except as otherwise provided in the last sentence of paragraph 2 of this Interim Order, any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtor pursuant to the DIP Facility Agreement shall be suspended. During the Remedies Notice Period, the Debtor, the Committee (if appointed) and/or the U.S. Trustee shall be entitled to an emergency hearing before this Court; provided, however, that the Debtor, the Committee (if appointed) and/or the U.S. Trustee shall have the initial burden of proof at such hearing and the only issue to be

INTERIM ORDER**Error! Reference source not found.** - 25

K:\2065889\00014\20136_BLL\20136P21RT

determined at such hearing shall be whether an Event of Default under the DIP Facility Documents has occurred and is continuing, and if an Event of Default under the DIP Facility Documents is determined to have occurred and be continuing, the automatic stay will not be re-imposed or continue with respect to the DIP Agent or DIP Lenders.  After the expiration of the Remedies Notice Period, without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed terminated as to the DIP Agent, the DIP Lenders, and the Prepetition Agent and Prepetition Lenders, all of whom may thereafter exercise all rights and remedies provided for in the DIP Facility Documents and the Prepetition Loan Documents.  Notwithstanding the occurrence of an Event of Default under the DIP Facility Documents or termination of the commitments under the DIP Facility Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents, the Prepetition Agent and the Prepetition Lenders under the Prepetition Loan Documents and this Interim Order shall survive the date of termination of the DIP Facility.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Agent and DIP Lenders.  For the avoidance of doubt, the Remedies Notice Period shall expire no later than the earliest date of cure or waiver of the applicable Event of Default or payment in full in cash of the Postpetition Indebtedness (such date, the "Remedies Expiration Date").

16.    Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, the Debtor, the Committee (if appointed), and their respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtor, whether in the Case or any successor case, including the conversion of the Case to a case under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.

INTERIM ORDER**Error! Reference source not found.** - 26

K:\206588\00014\20136_BLL\20136P21RT

17. <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in the Case (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtor having hereby waived such discharge), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting the Case to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) to the maximum extent permitted by law, dismissing the Case unless permitted under the DIP Facility Documents, and notwithstanding the entry of any such order, the terms and provisions of this Interim Order shall continue in full force and effect, and the DIP Facility Superpriority Claims, DIP Facility Liens and Adequate Protection granted pursuant to this Interim Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Interim Order and the DIP Facility Documents to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

18. <u>After-Acquired Property</u>.  Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the DIP Facility Documents and this Interim Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code) which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

INTERIM ORDER**Error! Reference source not found.** - 27

K:\2065889\00014\20136_BLL\20136P21RT

19.    <u>Authorization to Act</u>.  The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Interim Order and the DIP Facility, which may be reasonably required or necessary for the Debtor's full and timely performance under the DIP Facility and this Interim Order, including, without limitation:

(a)    the execution of the DIP Facility Documents;

(b)    the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtor, the DIP Agent, and the DIP Lenders may agree in accordance with the terms of the DIP Facility; <u>provided</u>, <u>however</u>, that notice of any material modification or amendment shall be provided to counsel for the Committee (if appointed) and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; <u>provided further</u>, that such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)    the non-refundable payments to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement, and reasonable costs and expenses as may be due from time to time as provided in this Interim Order, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

20.    <u>Insurance Policies</u>.  Upon entry of this Interim Order, the DIP Agent, on behalf of the DIP Lenders, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral and each liability insurance policy maintained by the Debtor (other than D&O insurance and any "tail" policy).

21.    <u>Subsequent Reversal</u>.  If any or all of the provisions of this Interim Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by

INTERIM ORDER**Error! Reference source not found.** - 28

K:\2065889\00014\20136_BLL\20136P21RT

subsequent order of this Court or any other court: (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of any Debtor to the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders pursuant to this Interim Order that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "Effective Date"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Interim Order and the DIP Facility Documents that is or was incurred prior to such party receiving written notice of the Effective Date; (b) the Postpetition Indebtedness and Adequate Protection pursuant to this Interim Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Interim Order and the DIP Facility Documents in effect immediately prior to the Effective Date; and (c) the use of Cash Collateral and the validity of any financing provided or security interest granted pursuant to this Interim Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code.

22. **Effect of Dismissal of Case.** If the Case is dismissed or converted, then neither the entry of such order nor the dismissal or conversion of the Case shall affect the rights of the DIP Agent and DIP Lenders under their respective documents or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Agent and DIP Lenders shall remain in full force and effect as if the Case had not been dismissed, converted, or substantively consolidated. If an order dismissing the Case is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Agent and DIP Lenders and the protections afforded to the DIP Agent and the DIP Lenders pursuant to this Interim Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall, notwithstanding such dismissal,

INTERIM ORDER**Error! Reference source not found.** - 29

K:\2065889\00014\20136_BLL\20136P21RT

remain binding on all interested parties), (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claims and Adequate Protection, and (iii) any hearing on a motion to dismiss the Case shall require at least twenty (20) days' prior notice to the DIP Agent, unless otherwise ordered by the Court for good cause shown.

23. <u>Findings of Fact and Conclusions of Law</u>. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon the entry thereof.

24. <u>Controlling Effect of Order</u>. To the extent any provision of this Interim Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Facility Documents, the provisions of this Interim Order shall control.

25. <u>Final Hearing</u>. The Final Hearing shall be heard before this Court on October [__], 2010 at ___:00 _.m. (_____) at the United States Bankruptcy Court for the Western District of Washington, at Seattle.

26. <u>Adequate Notice</u>. The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c) (2). Within three (3) business days after the Court's entry of this Interim Order, the Debtor shall mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties and all landlords of the Debtor. Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than **[_____], 2010 at ___:00 _.m. (_____)** on the following:

Dated: September _____, 2010

 

_____
The Honorable Karen A. Overstreet
United States Bankruptcy Judge

INTERIM ORDER**Error! Reference source not found.** - 30

K:\2065889\00014\20136_BLL\20136P21RT