# Exhibit A
# to Interim Order re DIP Financing

Modifications to Revolving Credit and Security Agreement

1. <u>Definitions</u>. Defined terms used herein, but not defined herein shall have the meanings in the Prepetition Credit Agreement and in the Interim Order to which this Exhibit is attached (as the case may be).

2. <u>Maximum Revolving Advance Amount.</u> The definition of "Maximum Revolving Advance Amount" in Section 1.2 of the Prepetition Credit Agreement is amended to read as follows:

> " 'Maximum Revolving Advance Amount' shall mean the maximum combined amount of the Prepetition Indebtedness and the Postpetition Indebtedness, as shown in the DIP Budget."

3. <u>Maximum Revolving Advances</u>. Section 2.4 of the Prepetition Credit Agreement is amended to read as follows:

> "2.4 <u>Maximum Revolving Advances</u>. The aggregate principal balance of Revolving Advances outstanding at any time shall not exceed the lesser of (a) the Maximum Revolving Advance Amount, or (b) the Formula Amount, plus an Overadvance not to exceed, at any date, the amounts shown on Projections."

4. <u>Projections; Use of Proceeds</u>. Debtor may utilize Advances by DIP Lenders pursuant to the DIP Facility exclusively to pay for the expenses incurred by Debtor as provided for in the Projections. Debtor represents and warrants that, to the best of the actual knowledge of its Chief Restructuring Officer, after due and reasonable inquiry, (a) the expenditures set forth in the Projections constitute all of Debtor's projected expenses during the period of the Projections, and (b) the sums to be advanced by DIP Lenders pursuant to the DIP Facility and the Projections are sufficient to pay all of the expenses set forth in the Projections and incurred through the last date shown in the Projections. Subject to the DIP Lenders' consent, Debtor's sales and cash receipts shall not be less than as set forth in the Projections and Debtor's expenses shall not exceed those set forth in the Projections, in all cases subject to the Approved Sales Variance, the Approved Cash Receipts Variance, and the Approved Disbursements Variance (all as defined below, and collectively, the "Approved Variances"). Nothing herein, however, permits the Revolving Advances to exceed the limits set forth in Section 3 above. As used herein, the Approved Variances include, and are defined and calculated as follows:

> a. "Approved Sales Variance" means a positive variance, or negative variance of less than 5%, between Debtor's actual sales and Debtor's projected sales measured commencing as of the end of the third week covered by the Projections and each week thereafter for both (i) the three-week period concluding with the week during which the variance is being calculated, and (ii) cumulatively from the commencement of the

bankruptcy case concluding with the week during which the variance is being calculated;

b. "Approved Cash Receipts Variance" means a positive variance, or negative variance of less than 5%, between Debtor's actual cash receipts and Debtor's projected cash receipts measured commencing as of the end of the third week covered by the Projections and each week thereafter for both (i) the three-week period concluding with the week during which the variance is being calculated, and (ii) cumulatively from the commencement of the bankruptcy case concluding with the week during which the variance is being calculated; and

c. "Approved Disbursements Variance" means a negative variance, or a positive variance of less than 5%, between Debtor's actual disbursements and Debtor's projected disbursements measured commencing as of the end of the third week covered by the Projections and each week thereafter for both (i) the three-week period concluding with the week during which the variance is being calculated, and (ii) cumulatively from the commencement of the bankruptcy case concluding with the week during which the variance is being calculated.

5. <u>Eurodollar Rate Loans.</u>  Eurodollar Rate Loans will not be available to Borrower. All Loans will be Domestic Rate Loans.

6. <u>Interest Rate</u>.

   a. The definition of "Alternate Base Rate", which presently reads:

   " 'Alternate Base Rate' shall mean, for any day, a rate per annum equal to the highest of (i) the Base Rate in effect on such day, (ii) the Federal Funds Open Rate in effect on such day plus one-half of one percent (0.50%), and (iii) the Daily Libor Rate plus one percent (1.00%)."

   is amended to add a floor to the Daily Libor Rate, so that it reads as follows:

   " 'Alternate Base Rate' shall mean, for any day, a rate per annum equal to the highest of (i) the Base Rate in effect on such day, (ii) the Federal Funds Open Rate in effect on such day plus one-half of one percent (0.50%), and (iii) the Daily Libor Rate (but not less than 2.00%) plus one percent (1.00%)."

   b. Notwithstanding any provisions of Section 3.1(a) and (b) of the Prepetition Credit Agreement to the contrary, effective on August __, 2010, the Domestic Rate Loans shall bear interest for each day at a rate per annum equal to the Alternate Base Rate plus 6% per annum.

For avoidance of doubt, the Base Rate is 3.25% and the interest rate on the DIP Facility is 9.25% as of the Petition Date,.

7. <u>Financial Covenants</u>.  The financial covenants set forth in Section 6.5 of the Prepetition Credit Agreement will not be operative.

8. <u>No Further Permitted Acquisitions</u>.  No Permitted Acquisitions will be permitted after the date hereof.

9. <u>No Further Permitted Encumbrances</u>.  The term "Permitted Encumbrances" as used in the Prepetition Credit Agreement shall not include any Liens or other encumbrances arising after the date hereof.

10. <u>Events of Default.</u>

   a. The following will not constitute "Events of Default":

      i. the filing of the Chapter 11 Case (notwithstanding Section 10.7 of the Prepetition Credit Agreement);

      ii. the events specified in Section 10.8 of the Prepetition Credit Agreement (relating to inability to pay debts), Section 10.12 of the Prepetition Credit Agreement (relating to Subordinated Loan Default, to the extent the Subordinated Loan Default consists of the same type of defaults as are set forth in this clause a), and Section 10.17 of the Prepetition Credit Agreement (relating to defaults in other agreements, to the extent the same are caused by the filing of the Chapter 11 case);

      iii. acts occurring or conditions existing pre-petition;

      iv. Debtor's failure to cure continuing events of default arising from acts occurring or conditions existing pre-petition, including, but not limited to those relating to the insolvency or financial condition of Debtor at any time before the closing of Debtor's Chapter 11 case; or

      v. The filing of a motion to appoint a trustee or to convert Debtor's Chapter 11 case to a case under Chapter 7.

   b. Without limiting any other provisions of the DIP Facility Agreement, the occurrence of any of the following shall constitute additional Events of Default under the DIP Facility Agreement and the Prepetition Credit Agreement:

      i. the appointment of an interim trustee, trustee or examiner for the Debtor, or a change in the current management of the Debtor without DIP Lenders' consent;

ii. the conversion of Debtor's Chapter 11 case to a case under Chapter 7;

iii. a change in the venue of Debtor's bankruptcy case;

iv. Debtor's payment of expenses not set forth in the DIP Budget;

v. Debtor's failure to stay within all of the Approved Variances at all times;

vi. the lack of entry of a Final Order in a form acceptable to Lenders in their sole discretion approving the DIP Facility within thirty (30) days after entry of the Interim Order approving the DIP Facility;

vii. entry of an Order of the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the Interim Order or Final Order approving the DIP Facility without DIP Lenders' prior written consent;

viii. the filing of a plan of reorganization in this Chapter 11 case which adversely alters DIP Lenders' rights under the DIP Facility or any other Post-Petition Documentation, except to the extent agreed to in writing by DIP Lenders in their sole discretion;

ix. the entry of an Order by the Court in this case in favor of a third party (I) authorizing post-petition financing or factoring by such third party or (II) granting such third party relief from the automatic stay as to any Pre-Petition Collateral or Post-Petition Collateral with a value in excess of $25,000;

x. Debtor's failure to have bidding procedures in connection with a sale of substantially all of its assets (a "Sale") approved by the Court on or before _____;

xi. Debtor's breach of the Asset Purchase Agreement dated September ____, 2010 between Debtor and Coast Rainier Acquisition Company (the "APA");

xii. Termination of the APA for any reason other as a result of approval of an Alternate Transaction with a Qualified Bidder (as those terms are defined in the APA);

xiii. Debtor's failure to hold a sale hearing with respect to the Sale by November 5, 2010 (with the Sale approved by the Court on that date); and

xiv. Debtor's failure to consummate the Sale on or before 60 days after the Petition Date, or at the closing of the Sale to pay over to the

Prepetition Agent and the DIP Agent, for the benefit of the Prepetition Lenders and the DIP Lenders, all proceeds of the Sale as approved by the Court up to the entire amount of Obligations then due and owing to the Prepetition Lenders and the DIP Lenders, subject to payment of the Carve-Out and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement.

11. <u>Term</u>. Section 13.1 of the Prepetition Credit Agreement is amended to read as follows:

"This Agreement, which shall inure to the benefit of and shall be binding upon the respective successors and permitted assigns of each Loan Party, the Agent and each DIP Lender, shall continue in full force and effect until the earlier of the following (the "Term") unless sooner terminated as herein provided: (i) 60 days after the Petition Date (the "Date Deadline"), or (ii) the effective date of a Plan of Reorganization in the Chapter 11 Case, or (iii) the effective date of the Sale."

12. <u>Fees.</u> In addition to the other fees provided for in the Prepetition Credit Agreement, Borrower shall pay Agent, for the ratable benefit of the DIP Lenders, the following fees, which are non-refundable:

   a. a closing fee in an amount of 2.00% of the DIP Facility Amount, which fee shall be payable on entry of the Interim Order; and

   b. an exit fee in an amount equal to 0.50% of the combined amount of the Prepetition Indebtedness and the Postpetition Indebtedness at the date payment is due, which fee shall be payable on maturity of the Postpetition Indebtedness or on any earlier Event of Default.

13. <u>Additional Reporting and Monitoring</u>.

   a. <u>Monitoring</u>. Without limiting the rights of the DIP Agent and DIP Lenders, DIP Agent and DIP Lenders and their respective agents shall have the right to monitor and review, on a weekly basis, borrowing base certificates, cash disbursements and rolling cash flow forecasts.

   b. <u>Weekly Budget Report</u>. On or before Tuesday of each week, Borrower shall provide DIP Agent and DIP Lenders with a weekly updated cash budget report, which will include but not be limited to the reporting of actual sales and cash disbursements for the prior week and showing a comparison on a weekly basis to the Budget.

   c. <u>Weekly Conference Call</u>. On Wednesday of each week (or less frequently as determined by DIP Agent), Borrower's Chief Financial Officer and CRO shall participate in a conference call with the DIP Agent and DIP

Lenders to discuss the Weekly Budget Report and any other issues that DIP Lenders wish to discuss.

14. <u>Co-Collateral Agent and Documentation Agent</u>. General Electric Capital Corporation (as successor to CitiCapital Commercial Corporation) ("GECC"), shall act as Co-Collateral Agent and Documentation Agent, and in such capacities shall perform such duties assisting the DIP Agent with respect to the Collateral and documentation relating to Borrower, as DIP Agent and GECC shall from time to time agree to in writing.