| | |
|---|---|
| Michael J. Gearin, WSBA # 20982<br>David C. Neu, WSBA # 33143<br>Brian L. Lewis, WSBA # 33560<br>K&L GATES LLP<br>925 Fourth Avenue Suite 2900<br>Seattle, WA 98104-1158<br>(206) 623-7580 | Honorable Karen A. Overstreet<br>Chapter : 11 |

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>COAST CRANE COMPANY,<br><br>Debtor. | No. 10-21229<br><br>DECLARATION OF TOM NEARY |

Tom Neary declares as follows:

1. I am the Chief Operating and Financial Officer of Coast Crane Company ("***Debtor***"). I am over the age of eighteen (18) years and competent in all ways to testify. If called before the Court to testify to the matters described herein, I would do so in a manner consistent with this Declaration.

2. I make this Declaration in support of the following motions and applications filed herewith by the Debtor:

   a. Debtor's Emergency Motion for Interim Financing Order (and related relief) (the "***DIP Financing Motion***");

   b. Debtor's Motion for Order Approving Sale of Substantially all of Debtor's Assets (and related relief) (the "***Sale and Bid Procedures Motion***");

   c. Debtor's Motion for Order Authorizing Debtor to Maintain Prepetition Bank Accounts and Cash Management System;

DECLARATION OF TOM NEARY - 1

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

    d. Debtor's Motion to Pay Prepetition Wages, Taxes and Honor Vacation Benefits;

    e. Debtor's Ex-Parte Applications to employ (i) K&L Gates as its legal counsel, (ii) Oppenheimer & Co. as its investment banker and (iii) CRG Partners as its financial and restructuring advisor in this case;

    f. Debtor's Motion for Order Authorizing Debtor to Honor Customer Deposits;

    g. Debtor's Motion to Authorize Payment of Prepetition Sales Tax (and related relief);

    h. Debtor's Motion for Standing Order Limiting Notice and Shortening Time on certain Motions; and

    i. Debtor's Motion for Interim Order Authorizing Debtor to Incur Credit Card Credit on a Post-Petition Basis.

3. Debtor is in the business of leasing, selling and servicing tower cranes, forklifts, hoists, elevators, boom lifts, scissor lifts and other heavy equipment used in commercial construction throughout the world. Debtor is a Delaware corporation with locations throughout the United States and Canada including its principal place of business in Seattle. Debtor's business was established in 1970 and has approximately 167 employees including 158 U.S. employees.

4. Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on September 22, 2010 (the "*Petition Date*"). Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

5. Debtor's bankruptcy filing was the result of a liquidity crisis occasioned by a dramatic decline in sale revenues. Debtor has operated for months pre-petition under a forbearance agreement with its lenders due to its inability to comply with certain covenants contained in its loan agreements. Debtor is in default under various agreements evidencing the debts described herein and has no present ability to service the debts absent the relief requested in the DIP Financing Motion.

6. Debtor was unsuccessful in its prepetition efforts to obtain alternative financing, as detailed below and in the Declaration of Matthew W. Hudson filed herewith, and Debtor's lenders

DECLARATION OF TOM NEARY - 2

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

are unwilling to continue lending to Debtor given its financial status and defaults under their loan agreement. Absent a liquidation of Debtor's assets through an orderly sale, Debtor would not be able to continue as a going-concern, and its employees, trade creditors, and customers would suffer losses of jobs and economic value. With the use of cash collateral and debtor-in-possession financing, Debtor intends to sustain its operations, so as to conclude a sale of its assets through a court-approved sale process.

7. Debtor owes approximately $90.5 million in indebtedness secured by security interests in substantially all of its assets, $6.9 million in indebtedness secured by purchase money security interests in favor of certain inventory suppliers, $905,000 in unsecured priority debt and $2.2 million in unsecured non-priority debt.

8. PNC Bank, National Association, Wells Fargo Bank, N.A. and Colonial Pacific Leasing Corporation (by way of assignment from other parties and collectively, "***Prepetition Lenders***") are Debtor's largest prepetition secured creditor under a Revolving Credit and Security Agreement dated May 18, 2007 (as amended, the "***Prepetition Senior Credit Agreement***"). As of the Petition Date, the total indebtedness under the Prepetition Senior Credit Agreement was approximately $75.5 million, plus accrued and unpaid interest, fees and expenses due and owing thereunder (the "***Prepetition Senior Indebtedness***"). To secure repayment of the Prepetition Senior Indebtedness, Debtor granted to Prepetition Lenders a security interest in all of its assets, including, without limitation, all accounts, contract rights, instruments, documents, chattel paper, general intangibles relating to accounts, equipment, machinery, furniture, fixtures, general intangibles, and inventory (the "***Senior Collateral***"). The Senior Collateral includes all proceeds and products of any of the Senior Collateral. The Prepetition Lenders' interest in the Senior Collateral was perfected by the filing of a UCC Financing Statement with the Delaware Secretary of State on May 21, 2007 under file no. 2007 2042256.

9. Knott Partners, L.P. ("***Knott***"), as successor-in-interest to JPM Mezzanine Capital,

DECLARATION OF TOM NEARY - 3

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

LLC ("***JPM***"), is Debtor's second largest pre-petition secured creditor under a Term Loan and Security Agreement dated May 18, 2007 (as amended, the "***Junior Lender Term Loan Agreement***"). As of the Petition Date, the total indebtedness under the Junior Lender Term Loan Agreement was approximately $15.0 million (the "***Prepetition Junior Indebtedness***"). To secure repayment of the Prepetition Junior Indebtedness, Debtor granted a security interest in substantially all of its assets, which was perfected by the filing of a UCC Financing Statement with the Delaware Secretary of State on May 18, 2007 under file no. 2007 1893113. The liens securing the Prepetition Junior Indebtedness were expressly subordinated to the liens securing the Prepetition Senior Indebtedness pursuant to that certain Intercreditor and Subordination Agreement dated May 18, 2007, by and between Prepetition Lenders and JPM (the "***Intercreditor Agreement***").

10. On June 25, 2009, Debtor entered into an Agreement for Inventory Financing (the "***DLL Agreement***") with De Lage Landen Financial Services ("***DLL***"). Under the DLL Agreement, DLL extended a credit line to Debtor and Debtor granted DLL a purchase money security interest in certain equipment and inventory (and the proceeds thereof) financed by DLL. DLL's security interest was perfected by the filing of a UCC Financing Statement with the Delaware Secretary of State on June 25, 2009 under file no. 2009 2046248. As of the Petition Date, the total indebtedness under the DLL Agreement was approximately $4.1 million.

11. Manitowoc Crane Group[1] ("***Manitowoc***") and Debtor are parties to that certain Distributor Sales and Service Agreement, dated July 19, 2007 (the "***Manitowoc Agreement***"), pursuant to which Debtor is appointed as a distributor of cranes, parts, and other equipment manufactured by Manitowoc (the "***Manitowoc Products***") and pursuant to which Manitowoc sells the Manitowoc Products to Debtor.

12. Under a Security Agreement dated May 13, 2005 (the "***Manitowoc Security***

---

[1] Manitowoc Crane Group consists of Manitowoc Cranes, Inc., Grove U.S., LLC, National Crane Corporation, Deutsche Grove GmbH, and Potain SAS.

DECLARATION OF TOM NEARY - 4

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Agreement*"), Debtor's obligations under the Manitowoc Agreement are secured by a purchase money security interest in all inventory, equipment, spare parts, and all other goods of every kind and description manufactured and/or sold by Manitowoc, and owned or acquired by Debtor, financed by Manitowoc, together with all existing and future attachments, accessions, accessories, replacements, substitutions, replacement parts and repairs therefor, incorporated therein, attached or affixed thereto, and/or used in connection therewith, and all cash and non-cash proceeds thereof (the "*Manitowoc Collateral*"), provided, however, that the Manitowoc Collateral is limited to those goods for which Manitowoc has not been paid in full. As of the Petition Date, the total indebtedness owed to Manitowoc was approximately $2.8 million (the "*Manitowoc Indebtedness*").

13. Debtor owes approximately $1.8 million and $1.8 million in derivative interest payable to PNC Bank and Citicapital Commercial Corporation, respectively, under swap agreements with both creditors.

14. As set forth in Debtor's Bankruptcy Schedules, Debtor has granted purchase money security interests in various other assets to other lenders to secure approximately $30,000 in total indebtedness.

15. Debtor and Guarantor are guarantors of the obligations of Coast Crane Ltd., a British Columbia corporation ("*Canadian Affiliate*") under a Revolving Credit Agreement dated August 17, 2007 (the "*Canadian Revolver*"). GE Canada Equipment Financing G.P., as successor-in-interest to Citicapital Commercial Corporation is the lender under the Canadian Revolver. As of the Petition Date, the total indebtedness under the Canadian Revolver was approximately $2.8 million.

16. On March 9, 2010, Debtor engaged Oppenheimer & Co. ("*Oppenheimer*") to serve as its financial advisor in connection with a possible restructuring, financing transaction or asset sale.

17. Oppenheimer contacted 140 parties that were identified as potential investors or purchasers of Debtor's assets. Of the 140 parties contacted, 15 expressed interest, either orally or in writing. After reviewing the expression of interest with equity holders and the secured lenders, five

DECLARATION OF TOM NEARY - 5

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

potential purchasers were invited to attend management presentations, which were held during the weeks of May 10 and May 17, 2010.

18. Of the five parties to attend presentations, four submitted second round indications of interest including Coast Rainier Acquisition Company ("***CRAC***"). After extensive review of the final proposals with its secured lenders, and negotiations with each of the parties, Debtor determined that a sale of substantially all of its assets to CRAC, or another bidder at a price exceeding the offer from CRAC, is in the best interest of Debtor and its stakeholders.

19. Following Debtor's review of CRAC's offer and after extensive arm's length negotiations with CRAC, Debtor entered into an Asset Purchase Agreement dated September 22, 2010 with CRAC (the "***Asset Purchase Agreement***"), pursuant to which CRAC would acquire substantially all of Debtor's assets (the "***Purchased Assets***") on the terms set forth in the Asset Purchase Agreement. The key terms of the Asset Purchase Agreement are set forth in Debtor's Memorandum filed in support of the Sale and Bid Procedures Motion.

20. Based upon the amounts of cash consideration to be paid to Debtor, and the assumption of liabilities, Debtor believes that the Asset Purchase Agreement represents the best proposal for the sale of its assets. However, Debtor will entertain overbids from alternative bidders and conduct an auction if an alternative bidder presents a timely qualified overbid.

21. Debtor believes that the sale of its business pursuant to 11 U.S.C. §363, rather than through a plan of reorganization is essential. Debtor's business is inherently dependent on its relationships with its clients, vendors, and employees. A delay in the sale of Debtor's assets, and a prolonged bankruptcy process, would necessarily strain those relationships and diminish Debtor's value to CRAC or another purchaser.

22. In the ordinary course of its business, Debtor collects and remits or otherwise pays sales taxes to taxing authorities. These sales taxes are calculated based on statutorily mandated percentages. Debtor remits the sales tax annually, semi-annually, quarterly or monthly, depending

DECLARATION OF TOM NEARY - 6

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

on the requirements of the particular taxing authority. Taxes to be approved by Debtor's motion described above may include both amounts not yet due and amounts paid by checks sent prior to the Petition Date that have not cleared Debtor's bank accounts on the Petition Date, although Debtor is not aware of any checks that have not cleared. Debtor estimates that the aggregate prepetition sales taxes unpaid as of the Petition Date is approximately $350,000.

23. In the ordinary course of its business, Debtor collects deposits from customers as down payments on the purchase of equipment and as security deposits on the rental of equipment.

24. As of the Petition Date, Debtor estimates it is in possession of customer deposits in the amount of approximately $500,000.00 (the "*Deposits*").

25. The Deposits were made by various customers for the purchase of cranes or equipment to be delivered by Debtor postpetition. Maintaining the satisfaction and goodwill of Debtor's customers is imperative to the success of reorganization by Debtor. If Debtor is unable to honor these deposits, its operations would be severely affected.

26. Debtor and Wells Fargo Bank, N.A. ("*Wells Fargo*") are parties to that certain Credit Card Agreement (the "*Credit Card Agreement*"), pursuant to which Wells Fargo extended credit to Debtor, on a pre-petition basis, up to a limit of $50,000 (the "*Credit Card Line*"). The balance owed under the Credit Card Line as of the Petition Date is approximately $0. Debtor's obligations under the Credit Card Line are secured by a security interest in a money market account, account no. 4123xxxxxx maintained by the Debtor with Wells Fargo (the "*Money Market Account*"), which, under the terms of the Credit Card Agreement, must maintain a minimum balance equal to the Credit Card Line. The current Balance of the Money Market Account is approximately $49,814.

27. Debtor maintains the following additional bank accounts, which it proposes to maintain post-petition (collectively, the "*Bank Accounts*"):

- Coast Crane Company/PNC Dominion Account – Wells Fargo Account ******8805.
- PNC Sweep Account – PNC Account **-****-8021.

DECLARATION OF TOM NEARY - 7

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

- PNC Draw Account – PNC Account **-****-8013.
- Coast Crane Company General Account – Wells Fargo Account ******1651.
- Coast Crane Company Controlled Disbursement Account – Wells Fargo Account ******5238.

28. Monies are deposited in the Coast Crane Company/PNC Dominion account through branch deposits, customer payments to Debtor's lockbox, and other wire or automated clearing house deposits. Funds are then distributed to various accounts depending on the specific requirements of Debtor's business. Payroll is deducted from the general account, and checks are drawn on the controlled disbursement account.

29. In addition, Debtor employs a cash management system featuring, among other things, operating accounts with Wells Fargo Bank, a lockbox where customer payments can be received, and a daily "sweep" to a PNC credit line as a loan paydown.

30. Debtor believes that failure to preserve the cash management system would disrupt Debtor's ordinary and usual financial affairs and impair its ability to reorganize and therefore requests the Court's authorization to maintain its bank accounts and cash management system.

31. Debtor believes that each of the financial institutions with which money of the estate is deposited is, pursuant to the requirements of 11 U.S.C. §345(b), insured by a department, agency, or instrumentality of the United States.

32. Debtor seeks authority to pay prepetition payroll, benefits and taxes due for the payroll period ending September 22, 2010 in the total amount of approximately $220,000 (the "*Unpaid Payroll*"). The Unpaid Payroll consists of paychecks or direct deposits in the total amount of approximately $204,000 and payroll taxes and various employee withholding in the amount of approximately $16,000.

33. Debtor is the tenant under the unexpired real property leases described in the DIP Financing Motion. Debtor is current on its lease obligations, but will owe approximately $150,000

DECLARATION OF TOM NEARY - 8

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

in lease obligations coming due October 1, 2010.

34. It is essential that Debtor continue to meet its lease and payroll obligations and fund its daily operating costs, as its failure to do so would jeopardize its ongoing operations and impair the value of its assets as a going concern. The value of Debtor's assets is, to a large degree, dependent upon the buyer's ability to retain Debtor's employees and maintain valuable customer relationships.

35. Debtor has no further credit availability under the Prepetition Senior Credit Agreement or the Junior Term Loan Agreement and does not have sufficient working capital resources to continue its business without immediate additional financing.

36. The DIP Facility Agreement described in the DIP Financing Motion (the "***DIP Facility Agreement***") and the proposed Interim Order granting the DIP Financing Motion are the result of several weeks of arm's-length negotiations conducted in good faith among Debtor and the lenders identified in the DIP Facility Agreement, all of whom have been represented by counsel during such negotiations. Debtor believes that the terms of the DIP Facility Agreement are fair and reasonable, that obtaining credit under the DIP Facility Agreement is necessary to preserve the value of Debtor's assets and that entering into the DIP Facility Agreement is an exercise of Debtor's sound and reasonable business judgment.

37. Attached hereto as Exhibit A is a true and correct copy of the Prepetition Senior Credit Agreement.

38. Attached hereto as Exhibit B is a true and correct copy of the Forbearance Agreement described in the DIP Financing Motion.

39. Attached hereto as Exhibit C is a true and correct copy of the Junior Lender Term Loan Agreement.

DECLARATION OF TOM NEARY - 9

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

40. Attached hereto as Exhibit D is a true and correct copy of the Intercreditor Agreement.

41. Attached hereto as Exhibit E is a true and correct copy of the Manitowoc Agreement and the Manitowoc Security Agreement described in the DIP Financing Motion.

42. Attached hereto as Exhibit F is a true and correct copy of the DLL Agreement and the finance orders related thereto.

43. Attached hereto as Exhibit G is a true and correct copy of the Canadian Revolver.

44. Attached hereto as Exhibit H is a true and correct copy of the DIP Facility Agreement, the terms of which are more particularly described in the DIP Financing Motion.

45. Attached hereto as Exhibit I is a true and correct copy of the DIP Budget described in the DIP Financing Motion.

46. Attached hereto as Exhibit J is a true and correct copy of the Asset Purchase Agreement.

47. Attached hereto as Exhibit K are true and correct copies of the results obtained from a UCC lien search conducted by Debtor's counsel in this matter.

48. Attached hereto as Exhibit L are true and correct copies of the Credit Card Agreement and associated Security Agreement.

49. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 21st day of September, 2010, at Seattle, Washington.

*/s/ Tom Neary*
Tom Neary

DECLARATION OF TOM NEARY - 10

K:\2065889\00014\20136_BLL\20136P21RU

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022