Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian L. Lewis, WSBA # 33560
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Karen A. Overstreet
Chapter : 11
Hearing Location: Seattle, Room 7206
Hearing Time: 11:00 am
Hearing Date: October 22, 2010
Response Date: October 18, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:

COAST CRANE COMPANY,

                    Debtor.

Case No. 10-21229-KAO

## FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, ~~(V) SCHEDULING A FINAL HEARING ON THE DEBTOR'S MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS~~

This matter is before the Court on the motion (Docket No. 11, the "Motion") filed by Coast Crane Company, as debtor and debtor-in-possession (the "Debtor") [1] in the above-captioned chapter 11 case (the "Case") requesting entry of an order, on an interim and final basis, among other things:[2]

(1)     Authorizing and approving, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and

---

[1]  The Debtor is Coast Crane Company, a Delaware corporation (EIN 32-0120926).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement (defined below).

Cash Collateral Final Order - 1

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtor, as Borrower, and the other Credit Parties signatory thereto to obtain postpetition financing up to the principal amount of $20,000,000 (the "DIP Facility") from PNC Bank, National Association (in its individual capacity, "PNC Bank"), for itself as a DIP Lender, and as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"), and the other lenders from time to time parties to the DIP Facility Agreement (as defined below) (collectively, in their lender capacity, the "DIP Lenders"), to (A) fund, among other things, ongoing working capital, general corporate, and other financing needs of the Debtor, (B) pay down the Revolving Advances (as defined below), which amounts are stipulated to be secured by the Prepetition Collateral (as defined below), (C) provide the Prepetition Agent and Prepetition Lenders with the Adequate Protection (each as defined below), (D) pay certain transaction fees, and other costs and expenses of administration of the Case, and (E) pay fees and expenses (including, without limitation, reasonable fees and expenses of counsel and financial advisors) owed to the DIP Agent and the DIP Lenders under the DIP Facility Documents (obligations under the DIP Facility and under this Final Order, including, without limitation, principal, accrued interest, unpaid reasonable fees and expenses, and all other obligations and amounts due from time to time under the DIP Facility Documents (as defined below) shall be referred to hereinafter collectively as the "Postpetition Indebtedness");

(2)     Authorizing and empowering the Debtor to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     providing, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the obligations under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-

Cash Collateral Final Order - 2

consensual lien, levy or attachment, whether incurred in the Case or any successor case, which allowed superpriority claims of the DIP Agent and DIP Lenders shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtor as provided herein (other than from the Avoidance Actions and proceeds thereof), subject to the payment in full in cash of the Carve-Out (as defined below) and, to the extent payable, the Purchaser Break-Up Fee and Expense Reimbursement[3] (the "<u>DIP Facility Superpriority Claims</u>"); and

        b.     be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests and liens (the "<u>DIP Facility Liens</u>") in and on all prepetition and postpetition property and assets of the Debtor, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "<u>Collateral</u>"), subject only to the Carve-Out and the Permitted Prior Liens and, to the extent payable, the Expense Reimbursement; <u>provided</u>, <u>however</u>, that the Collateral shall not include avoidance actions and/or the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code (the "<u>Avoidance Actions</u>");

        (4)     authorizing the Debtor pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code to use "cash collateral" (as defined under section 363 of the Bankruptcy Code) and provide Adequate Protection as defined in below to the Prepetition Agent and Prepetition Lenders on account of their claims under the Prepetition Loan Documents (as defined below) for any diminution in the value of their respective interests in the Prepetition Collateral (as defined below) caused by the use of Cash Collateral and the terms of the financing being granted herein; and

---

[3] As used herein, the term "Expense Reimbursement" means the expense reimbursement, if any, to be paid to the Purchaser by the Debtor in accordance with the Purchase Agreement, as approved by the Court in the Bid Procedures Order (defined below).

Cash Collateral Final Order - 3

(5)     scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of an order approving the DIP Facility, authorizing the use of Cash Collateral, and authorizing the grant of Adequate Protection to the Prepetition Agent and Prepetition Lenders, all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), following due and sufficient notice under the circumstances, the Court held interim hearings on the Motion on September 24, 2010 and September 28, 2010, and entered orders granting interim relief to the Debtor as provided in orders entered on September 24, 2010 and September 30, 2010.  Due and sufficient notice of the final hearing before this Court to consider entry of this Final Order (the "Final Hearing") having been provided by the Debtor as set forth in paragraph H below, and the Final Hearing having been held on October 22, 2010, and the Court having considered of all the pleadings filed with this Court, including any objections to the relief requested in the Motion that were not withdrawn or resolved at or prior to the Final Hearing; and upon the record made by the Debtor at the interim hearings and the Final Hearing, and the Declarations of Matthew W. Hudson (Docket No. 12) and Tom Neary (Docket No. 15), and after due deliberation and consideration and good and sufficient cause appearing therefore;

IT IS HEREBY FOUND:

A.     On September 22, 2010 (the "Petition Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business and manage its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     No request for the appointment of a trustee or examiner has been made in this Case.  The Official Committee of Unsecured Creditors (the "Committee") has been appointed or designated by the U.S. Trustee's office.  The Committee has engaged and is represented by counsel.

C.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Subject to the rights of any non-Debtor party in interest as provided in paragraph 6 herein, the Debtor acknowledges, agrees and stipulates that:

(i)      Pursuant to that certain Revolving Credit and Security Agreement, dated as of May 18, 2007, among NCA Crane Acquisition Co., Inc., Coast Crane Holdings, Inc., and Coast Crane Company, PNC Bank, as a Prepetition Lender and administrative and collateral agent (in such capacity, the "Prepetition Agent"), and Wells Fargo Bank, N.A. and Colonial Pacific Leasing Corporation as lenders (each, a "Prepetition Lender" and collectively in their lender capacity, the "Prepetition Lenders") party thereto (as amended, supplemented, or otherwise modified as of the Petition Date, the "Prepetition Credit Agreement"; and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"), the Prepetition Lenders made loans, and provided other financial accommodations to or for the benefit of the Debtor;

(ii)      Pursuant to the Prepetition Loan Documents, the Debtor was, as of the close of business on the Petition Date, indebted to the Prepetition Agent and the Prepetition Lenders in the amount of $74,847,000 with respect to "Revolving Advances" (as defined in the Prepetition Credit Agreement, the "Revolver"), plus accrued and unpaid fees, costs and expenses due and owing thereunder;

(iii)      For purposes of this Final Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including,

without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Loan Documents), and any and all obligations and liabilities, contingent or otherwise, owed with respect to other obligations outstanding thereunder;

(iv)     Pursuant to the Prepetition Loan Documents, the Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Lenders, liens and security interests (the "Prepetition Liens") on and in substantially all of the Debtor's property and assets whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral") to secure the Prepetition Indebtedness and guaranties thereof;

(v)     As of the Petition Date and immediately prior to giving effect to this Final Order, but subject to the rights of any non-Debtor party in interest as provided in paragraph 6 of this Final Order, (a) the Prepetition Loan Documents are valid and binding agreements and obligations of the Debtor, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the Permitted Encumbrances (as defined in the Prepetition Credit Agreement) and (ii) are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtor, and the Prepetition Indebtedness, and any amounts paid at any time to the Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (d) no claims of the Debtor exist against the Prepetition Agent or any Prepetition Lender under any contract or tort (including, without limitation, lender liability) theories of recovery or

K:\2065889\00014\20136_BLL\20136P21UK

pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code; and

(vi)     Subject to the rights of any non-Debtor party in interest as provided in paragraph 6 of this Final Order, the Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or causes of action against the Prepetition Agent, the Prepetition Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such).

E.     The Debtor's business has an immediate need for financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtor and to the success of the Case. Without such credit and use of Cash Collateral, the Debtor would not be able to operate its business and the Debtor's estate would be irreparably harmed.

F.     The Debtor is unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement (as defined below), the "DIP Facility Documents"). The Debtor has been unable to obtain sufficient unsecured credit solely under section 503(b) (1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtor without providing (a) the DIP Agent, for the benefit of the DIP Lenders, the DIP Facility

Cash Collateral Final Order - 7

Superpriority Claims and the DIP Facility Liens as provided herein and in the DIP Facility Documents, and (b) the Prepetition Agent and Prepetition Lenders with Adequate Protection of their interests in the Prepetition Collateral on the terms and conditions as set forth herein.

G.     The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders are willing to provide financing to the Debtor and/or consent to the use of Cash Collateral and other Collateral by the Debtor subject to (i) the entry of this Final Order, (ii) the terms and conditions of the DIP Facility Documents, and (iii) findings by the Court that such postpetition financing and use of Cash Collateral is essential to the Debtor's estates, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Liens, DIP Facility Superpriority Claims, and the other protections granted pursuant to this Final Order and the DIP Facility Documents with respect to such financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.  The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders have each acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral as contemplated by this Final Order and the other DIP Facility Documents, and the reliance by the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders on the assurances referred to above is in good faith.

H.     Notice of the Final Hearing and the proposed entry of this Final Order has been provided to (a) the twenty (20) largest creditors listed in the Debtor's list of creditors (excluding insiders), (b)  the Office of the United States Trustee for the Western District of Washington (the "U.S. Trustee"), (c) counsel to the DIP Agent and Prepetition Agent, (d) Knott Partners, L.P., as successor in interest to JPM Mezzanine Capital, LLC (the "Junior Lender") under that certain Term Loan and Security Agreement dated May 18, 2007 to which the Debtor is a party ("Junior Loan Agreement"); (e) all known parties asserting a lien against the Collateral, (e) the U.S. Attorney, (f) the Attorney General for the State of Washington, (g) any

Cash Collateral Final Order - 8

other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules, and (h) to all parties identified in the mailing matrix filed in this case by the Debtor (collectively, the "Notice Parties").  Under all the circumstances, the requisite notice of the Motion and the relief requested thereby and this Final Order has been provided in accordance with Bankruptcy Rule 4001.

I.       The ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, and use of Cash Collateral are in the best interests of the Debtor and its creditors and estate.  The primary purpose of the financing and use of cash collateral authorized hereunder is to enable the Debtor to continue operations pending the consummation of the sale of substantially all of the Debtor's assets to Coast Rainier Acquisition Company or its assigns (collectively, the "Purchaser") pursuant to that certain Asset Purchase Agreement (the "Purchase Agreement") dated September 21, 2010, subject to the Debtor's receipt of higher and better bids in accordance with bidding procedures described in the Order, Inter Alia, (i) Scheduling a Hearing to Approve Asset Purchase Agreement with Coast Rainier Acquisition Company for Sale of Debtor's Assets, Free and Clear of Liens; (ii) Approving the Form and Manner of Notice; (iii) Approving Expense Reimbursement; (iv) Approving Bidding Procedures; and (v) Approving Procedures for Assumption and Assignment of Executory Contracts (Docket No. 197) (the "Bid Procedures Order").  The financing and use of Cash Collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's business, properties and estates and to allow the orderly continuation of the Debtor's business pending the consummation of a sale.

J.       Based upon the record presented by the Debtor to this Court:  (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its

Cash Collateral Final Order - 9

fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtor, DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, and any loans, credit, use of Cash Collateral or other financial accommodations set forth in this Final Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

K.      The Prepetition Agent and Prepetition Lenders have consented to the relief sought in the Motion; provided, that such consent is expressly limited to: (i) the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Final Order; and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Final Order and the DIP Facility Documents.  Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Agent and Prepetition Lenders are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

L.      The Junior Lender asserts that the Debtor owed obligations under the Junior Loan Agreement in the principal amount of $15,000.000 as of the Petition Date plus accrued and unpaid interest, fees, costs and expenses due and owing under the Junior Loan Agreement (collectively, the "Junior Prepetition Indebtedness") which are secured by valid, properly perfected liens (the "Junior Prepetition Liens") in substantially all of the Debtor's prepetition assets (the "Junior Prepetition Collateral").  Nothing in this Final Order shall be deemed to fix the amount of the Junior Lender's claim.

M.      The Debtor asserts that pursuant to the terms of the Junior Loan Agreement and the Intercreditor Agreement, to the extent the liens securing the indebtedness under the Prepetition Credit Agreement are subordinated or *pari passu* with liens and claims granted to the DIP Lenders under this Final Order, the Junior Prepetition Liens will similarly be subordinated to the liens securing the postpetition financing on the same basis as the Junior

Cash Collateral Final Order - 10

Prepetition Liens are subordinated to the liens securing the indebtedness under the Prepetition Credit Agreement.

N.   The Junior Lender asserts that it is entitled to adequate protection for Debtor's proposed use of cash collateral to the extent permitted under the Intercreditor Agreement. The Junior Lender asserts that entry of this Final Order shall not waive, limit or otherwise affect any rights, claims or defenses of any of the parties to the Intercreditor Agreement.

O.   The Debtor asserts that (i) it entered into certain agreements with Manitowoc Cranes, Inc. Grove U.S. LLC and National Crane Corporation (collectively, "<u>Manitowoc</u>"), and De Lage Landen Financial Services ("<u>DLL</u>") pursuant to which it may have granted purchase money security interests in certain inventory purchased by the Debtor and financed through DLL and/or Manitowoc for which Manitowoc has not been paid in full, and (ii) to the extent that such security interests were granted and were properly perfected as purchase money security interests in inventory under applicable non-bankruptcy law, Manitowoc and/or DLL may have valid prepetition purchase money security interests in certain property of the Debtor's estate. Any issues with respect to the relative priority as between the liens and claims granted to the DIP Lenders or the Prepetition Lenders pursuant to this Final Order and the liens of Manitowoc/Grove and DLL are reserved.

  IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

   1.  <u>Disposition</u>. The Motion is granted as set forth in this Final Order. Any objections that have not previously been withdrawn or resolved at the hearing are hereby overruled. This Final Order shall immediately become effective upon its entry.

   2.  <u>Authorization to Borrow Under the DIP Facility</u>. With its consent and agreement, the Debtor is deemed to have re-executed and re-delivered all documents comprising the Prepetition Credit Agreement as of the Petition Date, which shall constitute, together with a fully executed and delivered Modification to DIP Facility Agreement in substantially the form annexed to the Motion, the "<u>DIP Facility Agreement</u>". With its consent

Cash Collateral Final Order - 11

and agreement, the Debtor is deemed to have re-executed and re-delivered all of the Prepetition Loan Documents, all of which shall constitute DIP Facility Documents. Provided that the Debtor is not in default under the terms of this Final Order or the DIP Facility Agreement, the Debtor is authorized to borrow under the DIP Facility from the DIP Lenders, in accordance with the terms and conditions of the DIP Facility Agreement and only in the amounts and at the times set forth in the budget attached hereto as <u>Exhibit A</u> (the "<u>DIP Budget</u>"), up to $20,000,000 in an aggregate principal amount of advances (the "<u>DIP Facility Amount</u>") (together with interest and reasonable fees, charges and expenses payable under the DIP Facility Documents), and to use amounts borrowed under the DIP Facility to fund the Debtor's working capital and other general corporate needs pursuant to the terms and conditions contained in the DIP Facility Documents, this Final Order and in any other orders of this Court, including, but not limited to, any amounts outstanding with respect to the Revolver.

3. <u>DIP Facility Superpriority Claims</u>. For the Postpetition Indebtedness and any other of the Debtor's obligations arising under the DIP Facility Documents, the DIP Lenders and DIP Agent are each granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the payment in full in cash of the Carve-Out and, to the extent payable, the Expense Reimbursement, the allowed DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtor whether now existing or hereafter acquired (other than the Avoidance Actions and proceeds thereof). The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Case and any successor case.

4. <u>DIP Facility Liens</u>. As security for the repayment of the Postpetition Indebtedness arising under the DIP Facility Documents, pursuant to sections 364(c) (2), (c) (3) and (d) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted, effective as of the Petition Date (without the necessity of the execution by the

K:\2065889\00014\20136_BLL\20136P21UK

Debtor or the filing, recordation, or execution and delivery of mortgages, security agreements, control agreements, financing statements, or otherwise) the DIP Facility Liens. The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date hereof, shall prime and be senior in all respects to the Prepetition Liens, the Replacement Liens (as defined below), and the Junior Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code, and are subject only to the Carve-Out, the Permitted Prior Liens and, to the extent payable, the Expense Reimbursement. As used herein, the term "Permitted Prior Liens") means only such liens and security interests that are (a) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (b) not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non bankruptcy law and (c) senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, including without limitation the Intercreditor and Subordination Agreement between the Debtor, PNC Bank, as agent, and JPM Mezzanine LLC, dated as of May 18, 2007 (as amended from time to time, the "Intercreditor Agreement").

    5.  Carve-Out.

    (a)  As used in this Final Order, the term "Carve-Out" shall mean, to the extent there is not sufficient unencumbered cash in the Debtor' s estate as of the closing of any sale of the Debtor's assets pursuant to the Bid Procedures Order, proceeds of Collateral to pay the following expenses: (i) any unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of title 28 of the United States Code (in this regard, the Debtor is ordered to pay any and all such fees as and when due); and (ii) subject to the terms and conditions of this Final Order, the allowed and unpaid reasonable fees and expenses of retained professionals ("Professionals") employed pursuant to sections 327, 328, 363 and 1103 of the Bankruptcy Code (to include CRG Partners Group, but not to include additional ordinary course professionals) (collectively, the "Professional Fees") by the Debtor or the

Cash Collateral Final Order - 13

Committee (X) prior to the Carve-Out Trigger Date (as defined herein) (and including amounts incurred but not invoiced or approved prior to the Carve-Out Trigger Date), an aggregate amount not to exceed the amounts for Professionals for each period as set forth in the DIP Budget, and (Y) following the Carve-Out Trigger Date, an aggregate amount not to exceed $25,000 (items (i) and (ii), collectively, the "Maximum Carve-Out Amount"). As used herein, "Carve-Out Trigger Date" shall mean the earlier of (i) the date on which the DIP Agent provides written notice to the Debtor and counsel to the Debtor, with a copy of such notice to counsel for the Committee, that the Carve-Out is revoked, which notice shall be delivered only on or after and during the continuation of an Event of Default under the DIP Facility and the termination of funding under the DIP Facility; or (ii) the Commitment Termination Date.

(b)     Each week, the Debtor shall either (i) set aside in trust with the Debtor's counsel, or (ii) pay, to the applicable Professionals, those amounts set forth in the DIP Budget for Professional Fees; the Maximum Carve-Out Amount shall be reduced each week by the amounts set forth in the DIP Budget for payment of Professional Fees during such week.

(c)     Any obligation of the DIP Lenders to fund or otherwise pay any amounts toward the Carve-Out shall be added to and made a part of the Postpetition Indebtedness and secured by the Collateral, and each DIP Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Final Order, the DIP Facility Agreement, the Bankruptcy Code, and/or applicable law in connection therewith.

(d)     Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, Cash Collateral, amounts borrowed under the DIP Facility Documents, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including without limitation the Debtor or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability

of, or asserting any defense, counterclaim, or offset to, the Postpetition Indebtedness, the DIP Facility Superpriority Claims or the DIP Facility Liens, (ii) asserting or soliciting or encouraging other parties to assert (A) any claims or causes of action against the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, including, without limitation, claims or actions to hinder or delay the assertion or enforcement of the DIP Facility Liens, or the Replacement Liens, or realization on the Collateral, in accordance with the DIP Facility Documents or this Final Order by the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, or (B) any Avoidance Actions against any DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Agent or any Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Indebtedness, any Prepetition Loan Document, the Prepetition Liens or the Adequate Protection granted herein; provided, however, that the Committee shall be authorized to use funds allocated in the DIP Budget to (i) investigate the liens, claims and interests of the Prepetition Agent, or the Prepetition Lenders, or any other claims or causes of action against the Prepetition Agent or any Prepetition Lender, which may be held by the Debtor's estate, and (ii) negotiate and/or contest the terms or entry of the Final Order. The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Junior Lender, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any of Debtor's obligations owed to the DIP Agent or any DIP Lender or the Prepetition Agent or any Prepetition Lender or the Junior Lender, or (y) except as expressly provided herein, subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties on and in the Collateral, the

Prepetition Collateral, or the Junior Prepetition Collateral (or their respective claims against the Debtor).

6. <u>Investigation Rights</u>. Notwithstanding anything herein to the contrary, until November 29, 2010 (the "<u>Investigation Termination Date</u>") the Committee shall be entitled to investigate the validity, amount, perfection, priority, and enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action held by the Debtor's estate against the Prepetition Agent or any Prepetition Lender or Manitowoc. If the Committee determines that there may be a challenge to any prepetition liens, claims or security interests of the Prepetition Agent, any Prepetition Lender or Manitowoc, the Committee may, on or before the Investigation Termination Date, file a motion or otherwise initiate an appropriate action (including any motion or other action seeking standing to prosecute such challenge) (each, a "<u>Challenge</u>"), and shall have only until the Investigation Termination Date to file an objection or otherwise initiate an appropriate action setting forth the basis of such Challenge. If a party does not file a Challenge on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and the Prepetition Agent or by order of this Court), (a) disputing any agreement, acknowledgement, release and/or stipulation contained in paragraph D of this Final Order, then the agreements, acknowledgements, releases and stipulations contained in paragraph D of this Final Order which have not been expressly disputed as the basis of a Challenge shall be irrevocably binding on all other parties, the estate, the Committee and all parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Case or any successor case in any jurisdiction) without further action by any party or this Court, and (b) the Committee and any other party in interest (including without limitation, any receiver, administrator, or trustee appointed in any of the Case or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Agent, any Prepetition Lender or Manitowoc. If any Challenge is timely filed on or before the Investigation Termination Date, all other claims and actions held by the party filing

Cash Collateral Final Order - 16

such Challenge against the Prepetition Agent, any Prepetition Lender or Manitowoc not expressly asserted in such Challenge shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived.  Nothing in this Final Order (a) confers standing on any party to file or prosecute such claims and actions described herein or (b) precludes the Prepetition Agent or any Prepetition Lender from seeking allowance of claim for all or any portion of the Prepetition Indebtedness prior to the occurrence of the Investigation Termination Date.  The Investigation Termination Date may not be extended unless (a) the DIP Agent (on behalf of the DIP Lenders), the Prepetition Agent (on behalf of the Prepetition Lenders), and the Debtor each consent in writing to an extension or (b) the Committee or any party in interest files a motion seeking an extension before the expiration of the Investigation Termination Date and the Court enters an order granting such an extension (regardless of whether such order is entered after the Investigation Termination Date).  Notwithstanding anything herein to the contrary, only the Committee shall be entitled to bring a Challenge on behalf of the Debtor's estate against the Prepetition Agent or any Prepetition Lender; no other party in interest shall be entitled to investigate the validity, amount, perfection, priority, or enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action held by the Debtor's estates against the Prepetition Agent or any Prepetition Lender.

7.     Section 506(c) and 552(b) Waivers.  Effective upon entry of a Final Order providing for such relief, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility or this Final Order, neither the Collateral nor the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, nor any of their claims, shall be subject to any costs or expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtor or any other party in interest without the prior written consent of the DIP Agent, and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to, funding of the Debtor's ongoing operations by the DIP Agent and

Cash Collateral Final Order - 17

DIP Lenders. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code is hereby deemed waived with respect to the Collateral. Neither the DIP Agent or any DIP Lender, nor the Prepetition Agent or any Prepetition Lender, nor the Junior Lender shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral. The Debtor has represented and warranted that those sums set forth in the DIP Budget are sufficient to pay all costs or expenses of administration that have been or may be incurred, and the Debtor is hereby ordered to use any and all sums borrowed pursuant to the DIP Facility only for purposes of paying those sums set forth in the DIP Budget.

8. <u>Authorization to Use Cash Collateral and Application of Collections and Certain Sale Proceeds.</u> To the extent that the Debtor had cash on hand as of the Petition Date (the "<u>Petition Date Cash</u>"), the Debtor was and is authorized pursuant to sections 105, 361, 363, 541 and 553 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, to use Cash Collateral up to the amount of the Petition Date Cash for the operation of its business in accordance with the DIP Budget. All cash collected by the Debtor after the Petition Date shall, except as otherwise expressly provided in the DIP Facility Agreement, be paid to the Prepetition Agent to pay down the Revolver in accordance with the Prepetition Loan Documents. The Debtor shall use DIP Revolving Credit Advances under the DIP Facility to fund the Debtor's working capital and other general corporate needs in accordance with the terms of the Final Order, the DIP Facility Documents and the DIP Budget.

(a) <u>Turnover of Funds and End of Term</u>. At the end of the Term and thereafter as and when received by the Debtor or its estate, all proceeds of the Prepetition Collateral and the Collateral (but excluding, with respect to proceeds of sale of Manitowoc cranes or equipment financed by Manitowoc pursuant to an order of this Court ("Manitowoc Collateral"), that portion of such proceeds necessary to satisfy the Debtor's unpaid purchase

Cash Collateral Final Order - 18

K:\2065889\00014\20136_BLL\20136P21UK

price obligation with respect to Manitowoc Collateral) shall be paid first to the Prepetition

Agent for application to any unpaid balance under the Revolver, and then to the DIP Agent for

application to any unpaid balance on the DIP Facility, all subject to the Carve-out and subject

to paragraph 3.1(b)(iv) of the Purchase Agreement, provided however, that the Debtor shall be

entitled to pay expenses provided for in the Budget through closing of the Sale and, with the

consent of the DIP Agent and Prepetition Agent, may establish a reserve for that purpose. Upon

closing of this case, Debtor's counsel shall pay first to the Prepetition Agent for application to

any unpaid balance under the Revolver, then to the DIP Agent for application to any unpaid

balance on the DIP Facility, any funds remaining in its trust account from retainers advanced in

connection with the Carve-out or any funds deposited in its trust account pursuant and subject

to the terms and conditions in Section 3.1(b)(iv) of the Purchase Agreement (but not including

any funds held in the Debtor counsel's trust account that are not proceeds of the Collateral or

the Prepetition Collateral, e.g., settlement proceeds of avoidance actions).

9. **Adequate Protection of Prepetition Lenders**. In consideration for the use

of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition

Liens, the Prepetition Agent (on behalf of the Prepetition Lenders) shall receive the following

(collectively the "Adequate Protection"):

(a) **Adequate Protection Liens**. To the extent there is a diminution in

the value of the Prepetition Lenders' interests in the Prepetition Collateral (whether the reason

for such diminution is as a result of, arises from, or is attributable to, any or all of the

imposition of the automatic stay (including, without limitation, any diminution in value of such

interests in the Prepetition Collateral prior to the Prepetition Agent (on behalf of the Prepetition

Lenders) seeking vacation of the automatic stay or the Court granting such relief), the priming

of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption,

use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral),

Cash Collateral Final Order - 19

the Prepetition Agent, on behalf of the Prepetition Lenders, is granted replacement liens (the "Replacement Liens") in the Collateral, which Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtor or the Prepetition Agent of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, the DIP Liens, the Permitted Prior Liens and, to the extent payable, the Expense Reimbursement, and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and such Replacement Liens shall cover assets, interest, and proceeds of the Debtor that are or would be collateral under the Prepetition Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

(b)     Administrative Claim.  The Prepetition Agent (on behalf of the Prepetition Lenders) is hereby granted in the Debtor's case an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations, to the extent that the Replacement Liens do not adequately protect the diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral from the Petition Date, and such Administrative Claim shall be junior and subordinate only to any superpriority claim of the kind specified in, or ordered pursuant to, section 364 of the Bankruptcy Code, the Carve-Out, any Permitted Prior Liens and, to the extent payable, the Expense Reimbursement.  The Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (excluding the Avoidance Actions and proceeds thereof).

(c)     Access.  In accordance with the terms of the Prepetition Credit Agreement, the Prepetition Agent and Prepetition Lenders shall be afforded continued reporting as to Collateral amounts and reasonable access to the Collateral and the Debtor's business premises, during normal business hours, for purposes of verifying the Debtor's compliance with the terms of this Final Order as it pertains to the Prepetition Agent and Prepetition

K:\2065889\00014\20136_BLL\20136P21UK

Lenders.  Such reports shall include but not be limited to (i) those required by the DIP Facility Agreement, and (ii) a weekly report before noon on Tuesday of each week, in form acceptable to the DIP Lenders, comparing actual sales, revenues, and expenses for (x) the week ending on Wednesday of the prior week, (y) the three week period ending on Wednesday of the prior week, and (z) the entire post-petition period ending on Wednesday of the prior week.  In addition, the Debtor shall permit representatives, agents, and employees of the DIP Agent and the DIP Lenders to have reasonable access to the Debtor's premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

(d)      Adequate Protection Payments.  Subject to the remainder of this paragraph 9(d) and paragraph 12 below, the Debtor shall timely pay to the Prepetition Agent from Cash Collateral or Revolving Credit Advances under the DIP Facility amounts as they accrue in connection with the Prepetition Indebtedness (the "Adequate Protection Payments"), including, without limitation, the current cash payment of interest charged on the Prepetition Indebtedness at the times provided for in the Prepetition Credit Agreement, cash management fees, expenses and charges.

(e)      Allowance of Claims.  Subject to any successful and timely Challenge pursuant to paragraph 6 above, the claims arising from or in connection with the Prepetition Indebtedness are hereby deemed "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

(f)      Right to Credit Bid.  The Prepetition Agent (on behalf of the Prepetition Lenders) and the DIP Agent (on behalf of the DIP Lenders) shall have the right to "credit bid" the combined amount of the Prepetition Lenders' claims and all amounts owed under the DIP Facility during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section

K:\2065889\00014\20136_BLL\20136P21UK

1129(b)(2)(A)(iii) of the Bankruptcy Code.  In addition, with respect to any credit bid made in connection with a sale pursuant to the Bid Procedures Order, the Prepetition Agent and the DIP Agent shall be required to agree to pay cash items payable in connection with consummation of the sale on terms no more or less favorable than the then highest bid or the initial bid by CRAC. Any such bid shall be submitted by the Prepetition Agent and the DIP Agent prior to the commencement of the Sale Hearing. The exercise by the Prepetition Agent (on behalf of the Prepetition Lenders) under this paragraph shall be without prejudice to the rights of the Committee under paragraph 6 of this Final Order, including without limitation the right to seek recovery of the value of or return of any assets determined by the Court to not constitute Prepetition Collateral for the benefit of the Debtor's estate, but only to the extent the value of any such assets exceeds an amount equal to (a) the amount advanced by the DIP Lenders under the DIP Facility pursuant to the terms of this Final Order, less (b) the amount by which the Prepetition Indebtedness has been reduced by sums collected and applied to Prepetition Indebtedness pursuant to the terms hereto.

(g)     The automatic stay is modified as to the Prepetition Agent (on behalf of the Prepetition Lenders) to allow implementation of the provisions of this paragraph 9, without further notice or order of the Court.

10.     Adequate Protection of Junior Lender.  In consideration for the use of the Junior Prepetition Collateral (including Cash Collateral) and the priming of the Junior Prepetition Liens, the Junior Lender shall receive the following (collectively the "Junior Adequate Protection"):

(a)     Adequate Protection Liens.  To the extent there is a diminution in the value of the Junior Lender's interests in the Junior Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in the Junior Prepetition Collateral prior to the Junior Lender seeking vacation of the automatic stay or the Court granting such relief, the priming of the Junior Prepetition Liens, the

Cash Collateral Final Order - 22

use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Junior Prepetition Collateral), the Junior Lender is granted replacement liens (the "Junior Replacement Liens") in the Collateral, which Junior Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtor or the Junior Lender of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, the DIP Liens, the Permitted Prior Liens, any all liens and claims of the Prepetition Lenders and the DIP Lenders (including without limitation, the Replacement Liens and the Administrative Claim), and, to the extent payable, the Expense Reimbursement, and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and such Junior Replacement Liens shall cover assets, interest, and proceeds of the Debtor that are or would be collateral under the Junior Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

(b)        Administrative Claim.  The Junior Lender is hereby granted in the Debtor's case an allowed administrative claim (the "Junior Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Junior Adequate Protection obligations, to the extent that the Junior Replacement Liens do not adequately protect the diminution in the value of the Junior Lender's interests in the Junior Prepetition Collateral from the Petition Date, and such Junior Administrative Claim shall be junior and subordinate to any superpriority claim of the kind specified in, or ordered pursuant to, section 364 of the Bankruptcy Code, the Carve-Out, any Permitted Prior Liens, any all liens and claims of the Prepetition Lenders and the DIP Lenders (including without limitation, the Replacement Liens and the Administrative Claim) and, to the extent payable, the Expense Reimbursement.  Subject to the foregoing, the Junior Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (excluding the Avoidance Actions and proceeds thereof).

K:\2065889\00014\20136_BLL\20136P21UK

(c)     Right to Credit Bid.  The Junior Lender shall have the right to "credit bid" the amount of the Junior Lender's claims under the Junior Loan Agreement during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, provided however, that the Junior Lender shall only be entitled to exercise such right if the obligations of the Debtor to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders have been or will be paid in full in cash in connection with the consummation of the transaction subject to such credit bid, and further provided that any bid by the Junior Lender which includes a credit bid component shall be subject to the following:

(i)     The credit bid shall be submitted no later than the close of any auction conducted pursuant to the Bid Procedures Order;

(ii)     The bid shall provide for satisfaction of the liabilities and obligations to pay all cash items payable in connection with consummation of the sale on no less favorable terms to the Debtor or the estate than the then-highest bid or the initial bid by CRAC; and

(iii)     Junior Lender shall comply in all respects with the requirements of the Bid Procedures Order.

The exercise by the Junior Lender under this paragraph shall be without prejudice to the rights of the Committee under paragraph 6 of this Final Order, including without limitation the right to seek recovery of the value of or return of any assets determined by the Court to not constitute Junior Prepetition Collateral for the benefit of the Debtor's estate.

11.     Adequate Protection of Manitowoc.  In consideration for the use, sale or lease of inventory that may constitute Manitowoc's collateral, pursuant to Bankruptcy Code Section 361(1), Manitowoc shall receive the periodic cash payments provided for in the DIP Budget, but not to exceed the Debtor's unpaid purchase price obligation with respect to the

Manitowoc prepetition inventory described in paragraph O above (the "Manitowoc Adequate Protection Payment").  Nothing herein shall prejudice or preclude Manitowoc from (a) requesting future modified or additional adequate protection from the Debtor or (b) requesting a determination from this Court that the proceeds of Manitowoc's collateral are subject to Manitowoc's security interest referenced in paragraph O above.

12.     Reimbursement of Fees and Expenses.  The Debtor shall promptly reimburse (i) the DIP Agent and the DIP Lenders in accordance with the DIP Facility Documents and (ii) the Prepetition Agent and the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement, for their reasonable costs and fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges and expenses, provided however, that the Debtor, upon receipt of invoices from the DIP Agent and DIP Lenders, shall provide copies of the same to counsel for the Committee.  None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute regarding the reasonableness of any such costs, fees, charges and expenses; provided further, however, that any payment of costs, fees, charges and expenses due to the Prepetition Agent and the Prepetition Lenders shall be subject to recharacterization as payment of principal in the event, and only to the extent, that the Prepetition Lenders may be determined to be undersecured.  The payment of such fees and costs in amounts in excess of those set forth in the Budget will not result in a breach of the DIP Facility Documents and DIP Agent shall provide additional funding under the DIP Facility to satisfy any such excess fees and costs before such fees and costs are reimbursed.

13.     Restrictions on the Debtor.  Other than the Carve-Out, the Permitted Prior Liens, and to the extent payable, the Expense Reimbursement, no claim or lien having a priority superior or *pari passu* with those granted by this Final Order to the DIP Agent, DIP

Cash Collateral Final Order - 25

Lenders, Prepetition Agent, Prepetition Lenders or Junior Lender shall be granted by the Debtor, while any obligations under the DIP Facility (or refinancing thereof) or any Prepetition Indebtedness remains outstanding without the written consent of the DIP Agent and Prepetition Agent.  Except as expressly permitted by the DIP Facility Documents and this Final Order, the Debtor will not, at any time during the Case while any obligations under the DIP Facility and/or the Prepetition Credit Agreement remain outstanding, grant senior or *pari passu* mortgages, security interests, or liens in the Collateral, the Prepetition Collateral, or any portion thereof pursuant to section 364(d) of the Bankruptcy Code or otherwise.

14.     Additional Perfection Measures.  Neither the DIP Agent nor any DIP Lender, or the Prepetition Agent or any Prepetition Lender or the Junior Lender shall be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Final Order (including, without limitation, taking possession of or obtaining control over any of the Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Agent or any DIP Lender may, in its discretion, file this Final Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded or other action taken on the Petition Date, with the priorities set forth herein; provided, that the failure of the DIP Facility Agent or any DIP Facility Lender to file any such financing statement, mortgage, deed of trust, notice of lien or other instrument, or to otherwise confirm perfection of such liens, security interests or mortgages or make any other such request shall not affect either the perfection or priority of the DIP Facility Liens.

15.     Rights with Respect to Certain Prepetition Agreements.  The DIP Agent and the DIP Lenders shall have all the rights and benefits with respect to each Blocked Account

Cash Collateral Final Order - 26

(as defined in the Prepetition Credit Agreement), any securities or other accounts subject to a Control Letter (as defined in the Prepetition Credit Agreement), each other agreement with a third party (including, but not limited to, any agreement with a landlord, warehouseman, customs broker, or freight forwarder), and each other notification or agreement received or furnished in connection with the Prepetition Credit Agreement, and all depository banks, blocked account banks, landlords, securities intermediary, warehousemen, customs brokers, freight forwarders and other third parties shall continue to comply, for the benefit of the DIP Lenders, with the terms and conditions of each such agreement or notification, in each such case whether or not, and as if, an additional agreement or notification has been executed or furnished in connection with the DIP Facility.  For the avoidance of doubt, the Junior Lender will timely provide any requested lien releases consistent with the Intercreditor Agreement.

16.     <u>Access to Collateral – No Landlord's Liens</u>.  Notwithstanding anything contained herein to the contrary and subject to applicable state law, and without limiting any other rights or remedies of the DIP Agent, for the benefit of the DIP Lenders, contained in this Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents and paragraph 16 below, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent (the "<u>Separate Agreement</u>"), enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from such landlord; <u>provided</u>, that, subject to the Separate Agreement, the DIP Agent shall only pay rent of the Debtor that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.

K:\2065889\00014\20136_BLL\20136P21UK

17.    <u>Automatic Stay</u>.  Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence and during the continuation of any Event of Default under the DIP Facility Documents, and delivery by the DIP Agent of written notice of its intent to exercise remedies (a "<u>Remedies Notice</u>") in each case given to the Debtor and its counsel, counsel to Purchaser, counsel to the Committee and the United States Trustee, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, and the Junior Lender shall be entitled to seek relief from the automatic stay on five (5) business days' notice following delivery of the Remedies Notice (the "<u>Remedies Notice Period</u>"); <u>provided</u>, <u>however</u>, immediately upon the commencement of the Remedies Notice Period and thereafter until the Remedies Expiration Date: (i) the DIP Lenders may charge default rates of interest; (ii) the Debtor shall have no right to use any Collateral except for payment of the Carve-Out, the Adequate Protection Payments, the Manitowoc Adequate Protection Payment, the Prepetition Indebtedness and the Postpetition Indebtedness and, to the extent payable, the Expense Reimbursement (as permitted by the Bid Procedures Order), or as otherwise provided in the last sentence of paragraph 2 of this Final Order; and (iii) except as otherwise provided in the last sentence of paragraph 2 of this Final Order, any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtor pursuant to the DIP Facility Agreement shall be suspended.  During the Remedies Notice Period, the Debtor or the Committee shall be entitled to seek an emergency hearing before the Court on five (5) days business notice to address disputed issues regarding allegations of default under the DIP Facility Documents.  At any hearing on a motion by the DIP Lenders for relief from the automatic stay, the DIP Lenders and/or the Junior Lender shall have the initial burden of proof at such hearing and the only issue to be determined at such hearing shall be whether an Event of Default under the DIP Facility Documents has occurred and is continuing, and if an Event of Default under the DIP Facility Documents is determined to have occurred and be continuing, the automatic stay will not be re-imposed or continue with respect to the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders.  Notwithstanding the

occurrence of an Event of Default under the DIP Facility Documents or termination of the commitments under the DIP Facility Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents, the Prepetition Agent and the Prepetition Lenders under the Prepetition Loan Documents and this Final Order shall survive the date of termination of the DIP Facility. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Agent and DIP Lenders. For the avoidance of doubt, the Remedies Notice Period shall expire no later than the earliest date of cure or waiver of the applicable Event of Default or payment in full in cash of the Postpetition Indebtedness (such date, the "Remedies Expiration Date").

18. <u>Binding Effect</u>. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, the Junior Lender, the Debtor, the Committee, and their respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtor, whether in the Case or any successor case, including the conversion of the Case to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Final Order.

19. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in the Case (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtor having hereby waived such discharge), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting the Case to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) to the maximum extent permitted by law, dismissing the Case unless permitted under the DIP Facility Documents, and notwithstanding the entry of any such order, the terms and provisions of this Final Order shall continue in full force and effect, and the DIP Facility Superpriority Claims,

Cash Collateral Final Order - 29

DIP Facility Liens and Adequate Protection granted pursuant to this Final Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Final Order and the DIP Facility Documents to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

20. <u>After-Acquired Property</u>. Except as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code) which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

21. <u>Authorization to Act</u>. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Final Order and the DIP Facility, which may be reasonably required or necessary for the Debtor's full and timely performance under the DIP Facility and this Final Order, including, without limitation:

(a) the execution of the DIP Facility Documents;

(b) the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtor, the DIP Agent, and the DIP Lenders may agree in accordance with the terms of the DIP Facility; <u>provided</u>, <u>however</u>, that (i) notice of any material modification or

Cash Collateral Final Order - 30

amendment shall be provided to counsel for the Junior Lender, the Committee and the U.S. Trustee, each of which will have five (5) business days from the date of delivery of such notice within which to object in writing; (ii) notice of any material modification or amendment of provisions of the DIP Facility Agreement or the DIP Facility Documents related to the Expense Reimbursement shall also be given to counsel for Purchaser, which will have five (5) business days from the date of delivery of such notice within which to object in writing; and any such modifications or amendments shall be permitted only pursuant to an order of the Court;

(c)     the non-refundable payments to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement, and reasonable costs and expenses as may be due from time to time as provided in this Final Order, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

22.     <u>Insurance Policies</u>.  Upon entry of this Final Order, the DIP Agent, on behalf of the DIP Lenders, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral and each liability insurance policy maintained by the Debtor (other than D&O insurance and any "tail" policy).

23.     <u>Subsequent Reversal</u>.  If any or all of the provisions of this Final Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of the Debtor to the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders or Junior Lender pursuant to this Final Order that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Final Order and the DIP Facility Documents that is or was incurred prior to such party receiving written notice of the

Effective Date; (b) the Postpetition Indebtedness and Adequate Protection pursuant to this Final Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Final Order and the DIP Facility Documents in effect immediately prior to the Effective Date, and the Junior Adequate Protection shall be governed in all respects by the provisions of this Final Order; and (c) the use of Cash Collateral and the validity of any financing provided or security interest granted pursuant to this Final Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code.

24. <u>Effect of Dismissal of Case</u>.  If the Case is dismissed or converted, then neither the entry of such order nor the dismissal or conversion of the Case shall affect the rights of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, or the Junior Lender under their respective documents or this Final Order, and all of the respective rights and remedies thereunder of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, and the Junior Lender shall remain in full force and effect as if the Case had not been dismissed or converted.  If an order dismissing the Case is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Agent and DIP Lenders and the protections afforded to the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Facility Documents, and the Adequate Protection and Junior Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Postpetition Indebtedness, Prepetition Indebtedness and amounts due under the Junior Loan Agreement shall have been paid and satisfied in full in cash (and that such DIP Facility Liens, DIP Facility Superpriority Claims, the Adequate Protection and Junior Adequate Protection and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claims, Adequate Protection, and the Junior Adequate Protection, and (iii) any hearing on a motion to dismiss the Case shall

Cash Collateral Final Order - 32

require at least twenty (20) days' prior notice to the DIP Agent, unless otherwise ordered by the Court for good cause shown.

25. <u>Findings of Fact and Conclusions of Law</u>. This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon the entry thereof.

26. <u>Bid Procedures Order</u>. Notwithstanding the foregoing provisions of this Final Order, the rights of trade creditors under the Bid Procedures Order, including but not limited to section 4(f)(iv), are fully preserved with respect to transactions conducted pursuant to the Bid Procedures Order and shall not be affected by the provisions of this Final Order.

27. <u>Controlling Effect of Order</u>. To the extent any provision of this Final Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Facility Documents, the provisions of this Final Order shall control.

DATED: November ___, 2010

*Karen A. Overstreet* t
**United States Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

Presented by:

K&L GATES LLP


By_/s/Michael J. Gearin
    Michael J. Gearin, WSBA #20982
    David C. Neu, WSBA #33143
    Brian L. Lewis, WSBA # 33560
Attorneys for Coast Crane Company

Cash Collateral Final Order - 33

Approved for Entry:

BUSH STROUT & KORNFELD

By /s/Armand J. Kornfeld
    Gayle E. Bush, WSBA #07318
    Armand J. Kornfeld, WSBA # 17214
Attorneys for the Official Unsecured Creditors Committee

FOSTER PEPPER PLLC

By: /s/Jack Cullen
    Jack Cullen, WSBA #7330
Attorneys for Knott Partnership LP

DAVIS WRIGHT TREMAINE LLP

By /s/Ragan Powers
    Ragan Powers, WSBA #11935

Attorneys for PNC Bank, National Association,
Colonial Pacific Leasing Corporation, and Wells
Fargo Bank, National Association

K:\2065889\00014\20136_BLL\20136P21UK

EXHIBIT A
DIP Budget

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# Cash Collateral/DIP Budget – Projected DIP Loan Balance

**Coast Crane Company**
**Cash Flow Forecast**
*($ in 000s)*

| | Actuals | Actuals | Actuals | CCC Forecast | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week #** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 7 Weeks |
| **Week Ending Wed,** | 9/29/10 | 10/6/10 | 10/13/10 | 10/20/10 | 10/27/10 | 11/3/10 | 11/10/10 | 11/17/10 | 11/24/10 | 12/1/10 | Total |
| **NET SALES** | | | | | | | | | | | |
| **Net Sales** | | | | | | | | | | | |
| Trade-Related Billings | $1,084 | $761 | $491 | $650 | $650 | $650 | $800 | $650 | $650 | $650 | $4,700 |
| Equipment Related Billings | 344 | 0 | 5 | 135 | 0 | 1,802 | 0 | 0 | 0 | 141 | 2,078 |
| Net Sales | $1,428 | $761 | $496 | $785 | $650 | $2,452 | $800 | $650 | $650 | $791 | $6,778 |
| **NET CASH FLOW** | | | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | | | |
| Trade Receipts | $759 | $1,005 | $748 | $650 | $650 | $650 | $800 | $650 | $650 | $650 | $4,700 |
| Equipment Receipts | 1,544 | 1,222 | 24 | 792 | 99 | 135 | 829 | 145 | 0 | 0 | $2,000 |
| Other Receipts | 5 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0 |
| Cash Receipts | 2,309 | 2,227 | 776 | 1,442 | 749 | 785 | 1,629 | 795 | 650 | 650 | $6,700 |
| **Operating Disbursements** | | | | | | | | | | | |
| Trade A/P | (173) | (443) | (127) | (400) | (500) | (500) | (500) | (500) | (500) | (500) | ($3,400) |
| Payroll | (577) | (5) | (34) | (436) | 0 | (620) | 0 | (450) | 0 | (620) | ($2,126) |
| Misc | 0 | (100) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0 |
| Manitowoc Pmt Plan (Past Due Trade) | 0 | (789) | (94) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | ($700) |
| Insurance | 0 | (75) | 0 | 0 | 0 | (75) | 0 | 0 | 0 | (75) | ($150) |
| P Card & Out of Pocket | (57) | (65) | (101) | (51) | 0 | (51) | 0 | (51) | 0 | (51) | ($204) |
| Sales Taxes | (7) | 7 | 0 | 0 | (150) | (400) | 0 | 0 | (150) | (125) | ($825) |
| Property Taxes | 0 | (214) | 0 | (33) | 0 | (167) | 0 | (42) | 0 | 0 | ($242) |
| Equipment Purchases | | | | | | | | | | | $0 |
| New & Spec Equipment Purchases | (1,101) | (339) | (117) | (7) | (759) | 0 | (1,103) | 0 | 0 | (113) | ($1,982) |
| Rental Fleet Equipment Purchases | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0 |
| Interest and Principal on Financed Units | 0 | (85) | 0 | (90) | 0 | 0 | 0 | 0 | (90) | 0 | ($180) |
| Equipment Purchases | (1,101) | (424) | (117) | (97) | (759) | 0 | (1,103) | 0 | (90) | (113) | ($2,162) |
| Operating Disbursements | (1,914) | (2,107) | (473) | (1,117) | (1,509) | (1,913) | (1,703) | (1,143) | (840) | (1,584) | ($9,809) |
| **Operating Cash Flow** | 394 | 120 | 302 | 325 | (760) | (1,128) | (74) | (349) | (190) | (934) | ($3,110) |
| *Cumulative Operating Cash Flow* | *394* | *514* | *816* | *1,141* | *381* | *(747)* | *(821)* | *(1,169)* | *(1,360)* | *(2,294)* | |
| **Non-Operating Disbursements** | | | | | | | | | | | |
| Credit Facility Cash Interest Expense | (505) | (585) | 0 | 0 | 0 | (613) | 0 | 0 | 0 | (613) | ($1,226) |
| DIP Loan Facility / Bank Fees | 0 | (100) | (4) | (40) | (140) | (40) | (40) | (40) | (140) | (442) | ($882) |
| Prof Fees | 0 | (160) | (80) | (80) | (80) | (80) | (100) | (80) | (105) | (80) | ($605) |
| Credit Line Payment / Other | 0 | 0 | 0 | (566) | 0 | 0 | 0 | 0 | 0 | 0 | ($566) |
| Utility Deposits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0 |
| US Trustee Fees | 0 | 0 | 0 | 0 | (20) | 0 | 0 | 0 | (20) | 0 | ($40) |
| Wind-Down Costs | 0 | 0 | | | | | | | | | $0 |
| Non-Operating Disbursements | (505) | (845) | (84) | (686) | (240) | (733) | (140) | (120) | (265) | (1,135) | ($3,319) |
| Total Disbursements | (2,419) | (2,952) | (558) | (1,803) | (1,749) | (2,646) | (1,843) | (1,263) | (1,105) | (2,719) | ($13,129) |
| **Net Cash Flow** | (110) | (725) | 218 | (361) | (1,000) | (1,861) | (214) | (469) | (455) | (2,069) | ($6,429) |
| *Cumulative Net Cash Flow* | *(110)* | *(836)* | *(618)* | *(361)* | *(1,362)* | *(3,223)* | *(3,437)* | *(3,905)* | *(4,360)* | *(6,429)* | |

# Cash Collateral/DIP Budget – Projected DIP Loan Balance

**Coast Crane Company**
**Cash Flow Forecast**
**($ in 000s)**

| | Week # 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| **Week Ending Wed,** | **10/20/10** | **10/27/10** | **11/3/10** | **11/10/10** | **11/17/10** | **11/24/10** | **12/1/10** |
| **LIQUIDITY** | | | | | | | |
| **Availability / (Overadvance)** | | | | | | | |
| (+) A/R | $2,628 | $2,544 | $3,961 | $3,256 | $3,133 | $3,133 | $3,253 |
| (+) Parts Inventory | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (+) Equip > 6 Months Old Inv. | 1,733 | 2,588 | 1,733 | 1,733 | 1,733 | 1,820 | 2,167 |
| (+) Equip < 6 Months Old Inv. | 176 | 176 | 176 | 176 | 176 | 176 | 176 |
| (+) Stabilizers Inv. | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (+) Used Equip. Inv. | 234 | 234 | 234 | 234 | 234 | 234 | 234 |
| (+) Service Vehicle Inv. | 828 | 828 | 828 | 828 | 828 | 828 | 828 |
| (+) Rental Equipment Inv. | 63,032 | 62,884 | 62,642 | 62,494 | 62,345 | 61,502 | 61,353 |
| (-) Reserves | (4,888) | (5,232) | (5,232) | (4,129) | (4,129) | (4,176) | (4,623) |
| Total Availability | $63,742 | $64,021 | $64,341 | $64,591 | $64,320 | $63,516 | $63,387 |
| (-) Maximum Revolving Advance Amount | (76,810) | (76,901) | (78,769) | (78,980) | (79,425) | (79,915) | (82,020) |
| Availability / (Overadvance) | (13,068) | (12,880) | (14,427) | (14,388) | (15,105) | (16,399) | (18,633) |
| Overadvance / (Under) | (13,068) | (12,880) | (14,427) | (14,388) | (15,105) | (16,399) | (18,633) |
| Under / (Over) Limit | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | |
| Maximum Revolving Advance Amount | 76,810 | 76,901 | 78,769 | 78,980 | 79,425 | 79,915 | 82,020 |
| Max Loan Balance | 76,810 | 76,901 | 78,769 | 78,980 | 79,425 | 79,915 | 82,020 |
| Under / (Over) Limit | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | |
| **Book Cash** | | | | | | | |
| Beginning Balance | 2,198 | 1,335 | 426 | 433 | 430 | 407 | 442 |
| (+) Draws | 940 | 700 | 2,000 | 1,800 | 1,200 | 1,000 | 1,700 |
| (+) Cash Disbursements | (1,803) | (1,609) | (1,993) | (1,803) | (1,223) | (965) | (1,664) |
| Ending Balance | 1,335 | 426 | 433 | 430 | 407 | 442 | 478 |
| **CREDIT FACILITY** | | | | | | | |
| **Pre-Petition Indebtedness** | | | | | | | |
| Beginning Balance | | $67,752 | $67,003 | $66,218 | $64,589 | $63,794 | $63,144 |
| (+) Additions | | 0 | 0 | 0 | 0 | 0 | 0 |
| (-) Repayments | | (749) | (785) | (1,629) | (795) | (650) | (650) |
| Ending Balance | 67,752 | 67,003 | 66,218 | 64,589 | 63,794 | 63,144 | 62,494 |
| | | | | | | | |
| **Post-Petition Indebtedness** | | | | | | | |
| Beginning Balance | | 9,058 | 9,898 | 12,551 | 14,391 | 15,631 | 16,771 |
| (+) Additions for Interest/Fees | | 140 | 653 | 40 | 40 | 140 | 1,055 |
| (+) Additions for Non-Lender Disbursements | | 700 | 2,000 | 1,800 | 1,200 | 1,000 | 1,700 |
| (-) Repayments | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ending Balance | 9,058 | 9,898 | 12,551 | 14,391 | 15,631 | 16,771 | 19,526 |
| **Maximum Revolving Advance Amount** | 76,810 | 76,901 | 78,769 | 78,980 | 79,425 | 79,915 | 82,020 |