HONORABLE KAREN A. OVERSTREET

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

COAST CRANE COMPANY,

Debtor.

No. 10-21229 (Ch. 11)

NOTICE OF AGREEMENT BETWEEN UNSECURED CREDITORS COMMITTEE AND COAST RAINIER ACQUISITION CORP.

The Official Unsecured Creditors Committee ("Committee") hereby provides notice that it has entered into a Transaction Support Agreement ("Agreement") with Coast Rainier Acquisition Corp. ("Coast Rainier").

A copy of the Agreement is attached herewith.

DATED this 8th day of November, 2010.

BUSH STROUT & KORNFELD

By /s/ Christine M. L. Presser
Christine M. Tobin-Presser, WSBA #27628
Gayle E. Bush, WSBA #07318
Attorneys for the Unsecured Creditors Committee

NOTICE OF AGREEMENT BETWEEN UNSECURED
CREDITORS COMMITTEE AND COAST RAINIER
ACQUISITION CORP. – Page 1

1806 20101 vk051b06te

BUSH STROUT & KORNFELD
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# TRANSACTION SUPPORT AGREEMENT

This Transaction Support Agreement, dated as of November 5, 2010 ("Agreement"), is made and entered into by and among the following parties (each a "Party," and together, the "Parties"): (i) Coast Rainier Acquisition Company ("CRA"), (ii) the Official Committee of Unsecured Creditors of Coast Crane Company (the "Committee") and (iii) the members (the "Committee Members" and, collectively with the Committee, the "Committee Parties") of the Committee in each of their individual capacities.

## *RECITALS*

On September 22, 2010, Coast Crane Company (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors is now operating its business and managing its affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code

On September 24, 2010, the United States Trustee for the Western District of Washington appointed the Committee.

On September 21, 2010, CRA and the Debtor entered into an asset purchase agreement (the "APA") pursuant to which CRA agreed to purchase from the Debtor and the Debtor agreed to sell to CRA substantially all of the assets of the Debtor (the "Assets"), through a sale process conducted pursuant to section 363 of the Bankruptcy Code and subject to Bankruptcy Court approval.

On September 22, 2010, the Company commenced the Chapter 11 Cases. The Company is now operating its business and managing its affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code

On October 12, 2010, the Bankruptcy Court entered the Order, Inter Alia, (i) Scheduling A Hearing To Approve Asset Purchase Agreement With Coast Rainier Acquisition Company For Sale Of Debtor's Assets, Free And Clear Of Liens; (ii) Approving The Form And Manner Of Notice; (iii) Approving Expense Reimbursement; (iv) Approving Bidding Procedures; And (v) Approving Procedures For Assumption And Assignment Of Executory Contracts (the "Bidding Procedures Order"), pursuant to which, among other relief, the Bankruptcy Court approved CRA as stalking horse bidder for the Assets and approved bidding procedures pursuant to which other prospective purchasers would be permitted to participate in an auction ("Auction") of the Assets.

The Auction is set to take place on November 8, 2010. The Debtor has received a single competing bid (the "Essex Bid") for the Assets from CC Bidding Corp (together with any affiliates, successors or assigns, "Essex").

Section 2.3(h), under each of the APA and the Essex Bid, provides that the "Aggregate Trade Payable Amount", which is an aggregate amount not to exceed $1,700,000, constitutes a component of the purchase price. The Aggregate Trade Payable Amount is to be allocated to pay the Debtor's trade payable liabilities to those parties ("Trade Payable Parties") identified on Schedule 2.3(h) of the APA, including Cure Costs associated with Assumed Executory Contracts and expenses of

#4828-4434-4328 

administration arising under section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims"). The Aggregate Trade Payable Amount will significantly reduce the pool of general unsecured claims, but will not pay such claims in full.

The Committee Parties recognize that without a further bid at Auction by CRA, the treatment of general unsecured creditors of the Debtor (which the Committee presently estimates to be in the range of 40%) would not be improved from the terms presently offered under each of the APA and the Essex Bid. The Committee has determined, in the exercise of its duties, to enter into this Agreement because the Committee believes that entry into this Agreement will likely provide Trade Payable Parties not holding Cure Claims or 503(b)(9) Claims with a recovery of 75% of their allowed claims.

CRA has agreed to modify its Purchase Price for the Assets under the APA so as to increase the Aggregate Trade Payable Amount in the manner set forth herein, subject to the Committee Parties' entry into this Agreement.

## *AGREEMENT*

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. Defined Terms. All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the APA.

2. Modification of APA. Subject to the Committee Parties' compliance with this Agreement, CRA agrees to modify its bid so that the APA is modified such that:

   a. the Aggregate Trade Payable Amount will increase to $2,344,000 (the "Base Aggregate Trade Payable Amount") plus, subject to the provisions set forth below, up to an additional $175,000 (the "Supplemental Aggregate Trade Payable Amount");

   b. the Base Aggregate Trade Payable Amount shall be used as follows:

      i. first, to pay all allowed Cure Costs (subject to Section 3.1(b)(vii) of the APA) and all allowed 503(b)(9) Claims of Trade Payable Parties that are set forth on that Schedule 2.3(h) attached as Exhibit A to the Notice to All Trade Creditors Regarding Claim Amounts ("Claim Notice"), Docket No. 167 ("Schedule 2.3(h)"), as well as 1) those additional 503(b)(9) claims filed as of November 3, 2010 (the deadline), exclusive of Manitowoc; and 2) the asserted cure claims of Bragg Crane and Equipment Leasing Specialists (without duplication) in the respective amounts of $180,845.70 and $10,267.32, all in an amount not to exceed $1,036,000; provided, however, that if such amount is insufficient to pay such allowed Cure Costs and such allowed 503(b)(9) Claims, CRA shall pay all such excess without resort to the Base Aggregate Trade Payable Amount; and

  ii. any remainder shall be allocated to pay up to 75% of allowed general unsecured claims of the Trade Payable Parties in the greater of the amounts set forth in Schedule 2.3(h) and the amounts of the claims as validly supplemented pursuant to the Claim Notice; provided, however, that if the Bankruptcy Court determines the proper amount of any such supplemented claim, that number shall be used for calculating the 75%.

 c. if the Trade Payable Parties holding allowed general unsecured claims do not receive a recovery of 75% of such claims from the Base Aggregate Trade Payable Amount, then only that portion of the Supplemental Aggregate Trade Payable Amount necessary to cause the Trade Payable Parties to recover 75% of their allowed general unsecured claims shall be paid by CRA to the Debtor's estate (or any successor or assign of the Debtor's estate) for the benefit of general unsecured creditors; and

 d. the payment of any Cure Costs referenced herein shall remain subject to Section 3.1(b)(vii) of the APA.

 3. <u>Obligations of the Committee Parties</u>. So long as CRA modifies its bid as set forth in <u>Section 2</u> above, and this Agreement remains in effect, the Committee Parties agree:

 a. that they shall unconditionally support the sale of the Assets to CRA, and shall actively argue in support of approval of such sale at the Auction and before the Bankruptcy Court;

 b. that they will not agree to, consent to, provide any support to, participate in the formulation of or seek Bankruptcy Court approval of (1) any sale of the Assets and/or stock (whether such sale is implemented pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan or otherwise) to Essex or to any party other than CRA, (2) a plan of reorganization or (3) liquidation (either under chapter 7 or chapter 11 of the Bankruptcy Code) in respect of the Company (each, an "<u>Alternative Transaction</u>");

 c. that they shall not, and shall not encourage any other person or entity to, delay, impede, appeal or take any other negative action, directly or indirectly, to interfere with the acceptance or implementation of the transactions contemplated under the APA;

 d. that they shall negotiate in good faith with the Debtor and CRA the terms of any orders to be entered by the Bankruptcy Court in connection with the approval of the APA, or any other matter that affects the Committee Parties' claims against the Debtor's estate; and

 e. that they shall not make any arguments with respect to the APA that any claim identified on Schedule 2.3(h) thereof constitutes a secured financing or should otherwise be removed from Schedule 2.3(h).

4. **Remedies; Specific Performance.** If a Party breaches any obligation or other term or provision of this Agreement, the Party shall not be liable for money damages. This Agreement, including, without limitation, the Parties' respective obligations to support the sale transaction pursuant APA and to facilitate its consummation as provided herein, is intended as a binding commitment enforceable in accordance with its terms. It is understood and agreed by each of the Parties hereto that (i) money damages would not be a sufficient remedy for any breach of this Agreement by any Party and in any event is not a remedy available under this Agreement, (ii) each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, and (iii) the right to terminate this Agreement is a cumulative remedy to specific performance. Notwithstanding any other provision of this Agreement, nothing in this Agreement shall be deemed to give any Committee Party standing to enforce any provision of the APA, or to seek any remedy for the breach of the APA, against CRA or its affiliates, and no Committee Party shall have such standing as a consequence of this Agreement. Such standing shall exclusively remain that of the Debtor's estate or any successor in interest thereto.

5. **Termination.** This Agreement shall terminate immediately and automatically, upon the earliest to occur of the following events (each a "Termination Event"):

   i. Upon one (1) business day's written notice of the failure of CRA to have modified its bid in a manner consistent with Section 2 above by the date of the Auction;

   ii. the Bankruptcy Court (a) shall not have entered an order approving CRA as the Successful Bidder (as defined in the Bidding Procedures Order) or (b) shall have entered an order approving a person or entity other than CRA as the Successful Bidder;

   iii. the Termination Date under the APA shall have occurred, or the APA shall have been terminated in accordance with its terms;

   iv. the APA shall have been modified or amended in a manner that would adversely affect the Committee Parties, without their prior written consent; or

   v. the Bankruptcy Court determines that this Agreement violates the fiduciary duties of the Committee or CRA's standing to acquire the Assets as a good faith purchaser.

6. **Effect of Termination.** Upon the termination of this Agreement pursuant to the provisions of Section 5 above, all obligations hereunder shall terminate and shall be of no further force and effect; provided, however, that any claim for specific performance arising from the breach of this Agreement shall survive termination and all rights and remedies with respect to such claim shall not be prejudiced in any way.

7. **Not A Solicitation.** This Agreement is not and shall not be deemed to be a solicitation for votes in favor of any chapter 11 plan or for consent to such in contravention of applicable non-bankruptcy law or section 1125(b) of the Bankruptcy Code.

8. Further Disposition or Acquisition of Claims. This Agreement shall in no way be construed to preclude any Party from disposing of or acquiring claims against the Debtor. However, so long as this Agreement has not been terminated, each Committee Member agrees that it will not sell, transfer or otherwise dispose of any claim against the Debtor unless the party buying such claim executes and delivers to CRA a writing in form and substance satisfactory to the CRA to the effect that the transferee is bound by the terms of this Agreement. In addition, any claim held as of the date hereof by a Party or acquired by a Party from and after the date hereof shall automatically be subject to all of the terms of this Agreement. In the event a sale, transfer or assignment completed in accordance with this Section 9 results in a Committee Member no longer holding any claim against the Debtor (an "Entire Transfer"), such Committee Member shall no longer be a party to this Agreement. No transferring Party shall have any liability under this Agreement arising from or related to the failure of its transferee to comply with the terms of this Agreement or the applicable assumption agreement following a valid and enforceable assignment pursuant to the terms of this Agreement.

9. Good Faith Negotiation of Additional Documents. Each Party hereby further covenants and agrees, subject to the other Party's compliance with the terms of this Agreement, to negotiate and execute and deliver any additional definitive documents and take any additional actions, in each case, reasonably necessary to implement the provisions of this Agreement, in good faith.

10. Execution Date. This Agreement shall become effective, and the obligations contained herein shall become binding, as of the date of this Agreement, upon execution by each of the Parties hereto.

11. Notices. Any notice required or desired to be served, given or delivered under this Agreement shall be in writing, and shall be deemed to have been validly served, given or delivered upon receipt if provided by personal delivery, sent by recognized overnight courier, or sent by facsimile or similar electronic means, as follows:

    i.    If to Clearlake:

    Clearlake Capital Group
    233 Wilshire Blvd.
    Suite 800
    Santa Monica, CA 90401
    Attn: José E. Feliciano
    Facsimile: 310-400-8801
    Email: jose@clearlakecapital.com

with a copy to:

Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Attn: Gregory A. Bray
Facsimile: 213-629-5063
Email: gbray@milbank.com

Attn: David B. Zolkin
Facsimile: 213-629-5063
Email: dzolkin@milbank.com

  ii. If to the Committee:

Louis Pantekoek
Chair of Unsecured Creditors Committee
P.O. Box 80323
Seattle, WA 98108

Facsimile: 206-723-4847
Email: louie@nelsontrucking.com


with a copy to:

Gayle E. Bush
Christine M. Tobin-Presser
601 Union Street, Suite 5000
Seattle, WA 98101

Facsimile: 206-292-2104
Email: gbush@bskd.com; ctobin@bskd.com


  iii. If to a Committee Member other than Louis Pantekoek, to the addresses set forth under its signature hereto, or to such other address or facsimile number as such Party shall provide to all other Parties hereto in writing.

 12. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the Parties as to the subject matter hereof and supersede all prior and contemporaneous agreements, representations, warranties, and understandings of the Parties, whether oral, written, or implied, as to the subject matter hereof.

 13. <u>Modification; Waiver</u>. No modification or amendment of this Agreement shall be binding unless executed in writing by Clearlake and the Committee Parties. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision,

whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

14. **Prior Negotiations.** This Agreement supersedes all prior negotiations with respect to the subject matter hereof and thereof.

15. **Third-Party Beneficiaries.** Nothing contained in this Agreement shall confer any rights or remedies under or by reason of this Agreement on any person or entity other than Clearlake and the Committee Parties, nor shall anything in this Agreement relieve or discharge the obligation or liability of any third party to Clearlake or to the Committee Parties.

16. **Successors And Assigns.** This Agreement shall be binding upon, and shall inure to the benefit of, each Party hereto and their respective legal representatives, successors, and assigns, including (in the case of any Company representative), any successor representative.

17. **Headings.** The descriptive headings of the several sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this agreement.

18. **Interpretation.** This Agreement is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.

19. **Counterparts; Fax Signatures.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile transmission or e-mail shall be effective as delivery of a manually executed counterpart.

20. **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the state of Washington without giving effect to the conflicts of law principles thereof.

21. **Jurisdiction.** Each Party hereby exclusively submits itself for the purpose of this Agreement and any controversy arising hereunder to the exclusive jurisdiction of the Bankruptcy Court and any appellate court thereof; provided, however, that in the event the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause or is without jurisdiction (including, without limitation, by reason of the prior closure or dismissal of the Chapter 11 Cases), the parties agree to unconditionally and irrevocably submit to the nonexclusive jurisdiction of any Washington State court or federal court of the United States of America sitting in the King County, and any appellate court from any thereof. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed and delivered as of the date first above written.

**COAST RAINIER ACQUISITION COMPANY,**
a Delaware corporation

By: _____
Name: José E. Feliciano
Title: President

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
    Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
    Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Ryan Dahlberg, Controller
MinnPar, LLC

By: _____
    Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
    Sharon Way
WHECO Corp.

#4828-4434-4328

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
   Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
   Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Ryan Dahlberg, Controller
MinnPar, LLC

By: _____
   Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Sharon Way
WHECO Corp.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: *[signature: Louis Pantekoek]*
Louis Pantekock, Treasurer
Nelson Trucking Co., Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
Ryan Dahlberg, Controller
MinnPar, LLC

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
Sharon Way
WHECO Corp.

#4828-4434-4328
180G 20101 vk051s06rr.002

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
   Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: *Richard Merritt, Chairman* (signed)
   Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
   Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Ryan Dahlberg, Controller
MinnPar, LLC

By: _____
   Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Sharon Way
WHECO Corp.

#4828-4434-4328
1806 20101 vk052f0630

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
    Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
    Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
    Ryan Dahlberg, Controller
MinnPar, LLC

By: *[signature]*
    Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
    Sharon Way
WHECO Corp.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Ryan Dahlberg, Controller
MinnPar, LLC

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Sharon Way
WHECO Corp.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: */s/ Charles Sparkman*
   Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

#4828-4434-4328
1806 20101 vk052f0630

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
   Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
   Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: /s/ _____
   Ryan Dahlberg, Controller
MinnPar, LLC

By: _____
   Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____
   Sharon Way
WHECO Corp.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Louis Pantekoek, Treasurer
Nelson Trucking Co., Inc.

By: _____
   Joe Ellsworth, CFO
Basil Equipment, Inc.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Richard Merritt, Chairman
Cen-Cal Machinery Co., Inc.

By: _____
   Charles Sparkman, President
Combined Carriers Co. dba Machine Carriers

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF COAST
CRANE

By: _____
   Ryan Dahlberg, Controller
MinnPar, LLC

By: _____
   Linda Inforzato, VP Finance
Nixon-Egli Equipment Co.

THE OFFICIAL UNSECURED
CREDITORS COMMITTEE OF
COAST CRANE

By: _____/s/_Ronald Williams_____
  ~~Sharon Way~~ Ronald Williams
WHECO Corp.