Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA #33143
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Karen A. Overstreet
Chapter 11
Hearing Location: Seattle, Room 7206
**Hearing Date: Friday, November 12, 2010**
**Hearing Time: 9:30 a.m.**
Response Date: November 10, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>COAST CRANE COMPANY,<br><br>                         Debtor. | No. Case No: 10-21229<br><br>REPLY TO OBJECTIONS TO DEBTOR'S DETERMINATION OF WINNING BID AND MOTION TO APPROVE SALE |

Coast Crane Company, the debtor and debtor-in-possession ("Coast" or the "Debtor") files its Reply to the Official Unsecured Creditors' Committee's Objection to Debtor's Determination of Winning Bid, the Objection to Notice of Sale filed by the Yakima County Treasurer, the Limited Objection to Notice of Sale filed by the Multnomah County Oregon Department of County Management, and the Conditional Response to Order Approving Sale filed by Grove US LLC, Manitowoc Crane Co, Manitowoc Cranes, Inc., and National Crane Corp, Deutsche Grove GmBh and Potain SAS (collectively, "Manitowoc").

The Debtor seeks approval of a sale of substantially all of its assets following a successful auction resulting in an increase in purchase price to the estate of more than $20 million. The proposed sale achieves the optimal value for the estate under the circumstances of this case and provides benefits to secured and unsecured creditors, including trade, employees and contract counterparties. There have been four objections filed with the court to the proposed sale. The

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 1

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Debtor believes that it has adequately addressed objections filed by personal property taxing authorities and believes it will reach agreement with Manitowoc on the issues raised in its conditional response.

I. **REPLY TO OBJECTION OF UNSECURED CREDITORS' COMMITTEE**

The Committee has entered into an agreement with Coast Rainier Acquisition Agreement ("CRAC") under which it is bound to support the CRAC purchase proposal and understandably supports the CRAC proposal. However, as is set-forth in the Debtor's Report of Auction, filed on November 10, 2010, the purchase price under bid submitted by CRAC at the Auction[1] was $92,471,000, as compared to a purchase price of $101,329,000 under the bid submitted by CC Bidding Corp. ("CCB"). While the Committee understandably prefers the bid submitted by CRAC (the "CRAC Bid"), pursuant to which CRAC proposed to assume $2.34 million in trade payables, to the bid submitted by CCB (the "CCB Bid"), under which $1.7 million of trade payables are to be assumed, it is an inescapable fact that the CCB Bid represents the highest and best offer to the estate and the creditors as a whole.

The total consideration offered by CCB to acquire the Purchased Assets exceeds the CRAC Bid by almost $8.9 million and represents an overall recovery 9.6% greater than would be realized under the CRAC Bid. While the trade creditors of the Debtor do not fare as well under the CCB Bid, the benefit of the CCB Bid to the creditor constituency as whole is far superior. Under the CCB Bid, the Senior Lenders' claim is satisfied via cash and debt assumption, and they have agreed that their claims against the estate will be satisfied by the CCB transaction. Furthermore, under the CCB Bid, $5.3 million of the indebtedness owed to the Junior Lender is assumed. When combined with the carveout from the junior secured indebtedness necessary to pay $1.7 million to trade creditors, the CCB Bid results in a satisfaction of $7 million of junior secured indebtedness. The detail attached to

---

[1] Capitalized terms, unless otherwise defined, have the meaning ascribed in the Debtor's motion for approval of the sale of its assets.

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 2

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the Declaration of Matthew W. Hudson in support of the Debtor's Report of Action evidences the tangible additional benefit to the creditors of the estate offered by the CCB Bid.[2]

The Court should approve a proposed §363 sale if the transaction is supported by the reasonable business judgment of the debtor. *See In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991); *In re Abbotts Dairies Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); 2 COLLIER ON BANKRUPTCY § 363.03 (15th ed. 1991) (describing the "business justification" test and analysis). Beyond the deference given to the debtor's business judgment, "the creditors are entitled to deference to their reasonable views by the court." *In re Nacio Systems, Inc.*, 2009 WL 2824770 (Bankr. N.D. Cal. 2009) (citing *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir.1986)). There can be no doubt that Debtor has exercised its sound business judgment in deeming the CCB Bid to be the highest and best offer for the Purchased Assets, and the creditors holding the vast majority of the claims against the estate, by dollar amount, support the CCB Bid. The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. *See, e.g., In re Lahijani*, 325 B.R. 282, 288 (9th Cir. 2005); *In re Canyon Partnership*, 55 B.R. 520, 526 (Bankr. S.D. Cal. 1985) (court must be able to determine from facts and evidence presented that "proposed sale price is fair and reasonable and that the sale is in the best interest of the estate and creditors."). In order to maximize value to the estate, the court determines the "highest and best offer" for the debtor's assets. *See, e.g., In re Colony Hill Assocs.*, 111 F. 3d 269, 272 (2d Cir. 1997); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986); *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997). The CCB Bid is the highest and best offer for the estate's assets and realizes the optimal value under the circumstances

---

[2] The Junior Secured Creditor has stipulated that its claim will be reduced by this amount based upon a carveout of proceeds from its collateral to pay the trade and the assumed debt amounts.

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 3

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

of this case. While the Debtor is sympathetic to the concerns of the Committee, it cannot reasonably ignore the almost $9 million difference between the bids, nor the significant benefit to the CCB Bid to its largest creditor constituencies.

The Committee's objection does not challenge the indisputable fact that the CCB Bid represents a higher and better offer to the creditor constituency as a whole, but rather suggests that the Debtor has reduced the amounts forecasted to be paid the trade creditors. The Debtor has consistently communicated to the Committee, and the Committee has clearly understood, that the trade payables, cure amounts, and 503(b)(9) claim amounts reflected on the Debtor's records at the beginning of this proceeding were subject to change as invoices continued to come in on pre-petition obligations and reconciliations occurred based upon claims filed by creditors. The Debtor has committed, and continues to be committed, to working with the Committee to ensure that the trade payable schedule is as accurate as possible at closing. The Committee requested a procedure, implemented by the Debtor, to notify creditors of the amount reflected on the Debtor's books and requesting documentation if the creditor was not in agreement. The Debtor has facilitated that process and is reconciling the claims delivered to the Committee with its records so as to ensure an accurate trade creditor claims payment schedule.

It is disingenuous for the Committee to now argue that the CCB Bid should be rejected because the amount to be paid to trade creditors who are not owed cure or do not hold 503(b)(9) claims has decreased as a result of additional cure and 503(b)(9) claims that have come to light. The Purchase Agreement has always been clear that $1.7 million was allocated to trade debt as a whole, inclusive of 503(b)(9) claims and amounts necessary to cure executory contracts, and all parties have understood that as records are reconciled the allocation would be affected as a result. All of this notwithstanding, the fact remains that the CCB Bid represents a substantial benefit to the trade creditors as a whole, who will, on average, receive a return of approximately 62% of their claim, whether in the form of a cure payment on an executory contract, 503(b)(9) claim, or payment on

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 4

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

their unsecured claim.

## II. REPLY TO OBJECTIONS OF YAKIMA COUNTY, WA, and MULTNOMAH COUNTY, OR

The Yakima County Treasurer ("Yakima") and the Multnomah County Oregon Department of County Management ("Multnomah" and collectively with Yakima, the "Taxing Authorities") have filed limited objections to the Sale Motion. The Debtor has attempted to reach-out to Yakima and Multnomah prior to the Sale Hearing in an effort to resolve their objections, but has been unable to make contact as of the filing of this response.

Yakima has objected to the Sale unless personal property taxes for the years of 2010 ($2682.88) and 2011 ($5,365.75) are paid at closing. At the time that Yakima filed its objection, second-half 2010 taxes were not yet due and owing. On October 31, 2010, the due-date, the 2010 Yakima County personal property taxes were paid through the debtor-in-possession budget. Multnomah has likewise filed an objection asserting that 2010 and 2011 personal property taxes, totaling $66,766.50, must be paid at closing. While Multnomah County has not broken out the amounts by year, the Debtor is scheduled to pay the 2010 taxes within the next week, prior to closing.

Pursuant to Section 11.2 of the Purchase Agreement, CCB is liable for all personal property taxes for all tax years after the closing date. Accordingly, under the Purchase Agreement, the 2011 taxes will be paid by CCB in the ordinary course. That said, CCB has committed to the Debtor that it will satisfy the obligations to Yakima and Multnomah as necessary at closing.

## III. REPLY TO MANITOWOC RESPONSE

Manitowoc has not objected to the proposed sale, but has filed a response indicating that it believes that it is owed $3,000,757.75, of which $2,041,690.22 is for cranes purchased post-petition. Manitowoc has also indicated that it will not voluntarily consent to an assignment of its Distributorship Agreement with the Debtor to CCB.

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 5

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

While there may be some discrepancies between the Debtor's and Manitowoc's records regarding the amount owed to Manitowoc, which are being reconciled, the Debtor's obligations to Manitowoc will be paid either through the Debtor-in-Possession financing, which contains a budget item for pay-down of the pre-petition secured obligation to Manitowoc, or through the ordinary course post-closing, as CCB, under sections 2.3(f) and 2.3(g) of the Purchase Agreement CCB is assuming up to $750,000 of trade payables owed to Manitowoc for non-equipment related purchases, and all amounts owed to Manitowoc for unsold cranes. Even assuming Manitowoc's figures are correct, the amount of non-equipment trade payable liabilities which CCB has agreed to assume exceed the amount owed Manitowoc.

The Debtor does intend to seek assumption and assignment of the Manitowoc Distributorship Agreement, and is working with Manitowoc towards a resolution of any concerns it has with respect to that issue.

## IV. CONCLUSION

For the reasons set-forth herein, the Debtor has deemed the CCB Bid to be the highest and best offer for the Purchased Assets and asks the Court to enter an order confirming the sale to CCB.

DATED this 11th day of November, 2010.

               K&L GATES LLP

               By */S/ David C. Neu*
                 Michael J. Gearin, WSBA # 20982
                 David C. Neu, WSBA #33143
                 Attorneys for Coast Crane Company

DEBTOR'S REPLY TO OBJECTIONS
TO DEBTOR'S DETERMINATION OF WINNING BID
- 6

K:\2065889\00015\20347_DCN\20347P2625

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022